767 F.2d 464
 56 A.F.T.R.2d 85-5548, 85-2 USTC P 9523,
41 UCC Rep.Serv. 1002
 BROWN & ROOT, INC.,
v.
HEMPSTEAD COUNTY SAND & GRAVEL, INC. and Wilson, Gunter & Walker.
PIKE CO. BANK OF MURFREESBORO, ARKANSAS, Appellee,
v.
INTERNAL REVENUE SERVICE, Appellant.
 No. 84-2153.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 15, 1985.
Decided July 10, 1985.
 
 William Estabrook, Washington, D.C., for appellant.
 Timothy W. Grooms, Little Rock, Ark., for appellee.
 Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 Brown & Root, Inc. instituted this interpleader action in United States District Court to determine the relative priority of the United States and Pike County Bank of Murfreesboro, Arkansas (the Bank) to an interpleaded fund comprising the damages Brown & Root agreed to pay to Hempstead County Sand & Gravel, Inc. (Hempstead) in settlement of a breach of contract action Hempstead had brought against Brown & Root. The Bank asserted a claim to the fund by way of a written, but unfiled and unrecorded, assignment of Hempstead's cause of action against Brown & Root granted to it by Hempstead as collateral for a loan. The United States asserted a claim to the fund by way of several federal tax liens it holds against Hempstead for unpaid taxes. The district court,[1] 588 F.Supp. 1266, determined that, under Arkansas law, the Bank was entitled to priority. The United States brings this appeal. We affirm.
 
 
 2
 I. BACKGROUND.
 
 
 3
 On May 2, 1980, Hempstead commenced an action in state court against Brown & Root seeking money damages for an alleged breach of contract. Brown & Root removed the action to the United States District Court for the Western District of Arkansas and commenced discovery. Meanwhile, in October 1980, Hempstead entered into negotiations with the Bank to obtain a loan. The parties executed a loan agreement on October 29, 1980, by which Hempstead received $100,000 from the Bank. As partial collateral for the loan, Hempstead assigned its rights in its cause of action against Brown & Root to the Bank. This assignment did not contain an acknowledgement made in the form required under Arkansas law for the acknowledgement of deeds. Ark.Stat.Ann. Sec. 49-208 (1971). Moreover, the Bank did not file, during the pendency of the breach of contract action, a properly acknowledged written transfer covering the assignment of rights to the cause of action with the clerk of court of either the Hempstead County Circuit Court or the United States District Court for the Western District of Arkansas, as required by section 29-123 of the Arkansas Code which governs sales or transfers of judgments or causes of action,[2] nor did it file a financing statement asserting its interest in the action with the Arkansas Secretary of State or the Circuit Court of Hempstead County pursuant to the relevant provision of the U.C.C. as adopted in Arkansas. Ark.Stat.Ann. Sec. 85-9-302 (1983 Cum.Supp.).
 
 
 4
 Between January 28, 1981 and August 21, 1981, the Internal Revenue Service filed several notices of federal tax liens against Hempstead for unpaid FICA and corporate income taxes. These tax liens totalled $98,597.33.
 
 
 5
 In early 1982, Hempstead reached a settlement with Brown & Root over the breach of contract suit pending in federal district court. Brown & Root immediately[3] instituted this interpleader action in the Eastern District of Arkansas and paid the $45,000 settlement proceeds into the registry of the court. The court has approved payment of $15,825.83 for attorneys' fees and costs. The balance of this sum, about $29,000, is the subject of the parties' respective claims in this action. Because the claims of both the Bank and the Government are well in excess of the remaining balance,[4] the ultimate question is which party has priority to the fund.
 
 
 6
 The Government's tax liens against Hempstead attached to Hempstead's cause of action against Brown & Root under section 6321 of the Internal Revenue Code, which provides that a lien attaches to "all property and rights to property, whether real or personal" which belong to a taxpayer.[5] However, 26 U.S.C. Sec. 6323(a), which governs priority and validity of section 6321 tax liens, further provides that a section 6321 lien held by the Government is not valid against certain specified parties, including the holder of a security interest, until notice has been filed with the Secretary.[6]
 
 
 7
 Section 6323(h) defines the terms used in that section. Section 6323(h)(1) defines the term "security interest" as
 
 
 8
 any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.
 
 
 9
 Thus, the issue before the district court was whether the Bank's interest in Hempstead's cause of action was "protected under local law against subsequent judgment lien arising out of an unsecured obligation."
 
 
 10
 The Bank argued to the district court that, under Ark.Stat.Ann. Sec. 29-123, it held a security interest, as that term is defined in 26 U.S.C. Sec. 6323(h)(1), in the cause of action that arose prior to the dates at which the IRS filed notices of federal tax liens. The Government argued that the U.C.C. as adopted in Arkansas (Title 85 of the Arkansas Statutes), not section 29-123, controlled this case. Because the Bank concededly did not comply with the relevant provision of the U.C.C. which requires the filing of a financing statement to perfect a security interest, Ark.Stat.Ann. Sec. 85-9-302 (1983 Cum.Supp.), the Government asserted that the Bank's unperfected security interest was subordinate to the rights of a subsequent judgment lienor, see Ark.Stat.Ann. Sec. 85-9-301(1)(b) (1983 Cum.Supp.), and therefore subordinate to the tax liens.
 
 
 11
 The district court determined that section 29-123 controlled the assignment of Hempstead's cause of action in this case, rather than the provisions of the U.C.C. The court then concluded that the Bank's failure to acknowledge and record the assignment as required by section 29-123 did not affect the priority in this case, relying on McKim v. Highway Iron Products Co., 181 Ark. 1121, 29 S.W.2d 682 (1930), in which the Arkansas Supreme Court had interpreted section 29-123 and held that an assignment of a cause of action is valid between the parties to the assignment and against any subsequent transferee who did not pay value, notwithstanding the original assignee's failure to comply with the acknowledgement and filing provisions of section 29-123. The McKim court concluded that failure to file would only subordinate the assignee's claim to the claim of a subsequent bona fide purchaser for value. Because the United States did not assert a claim as a subsequent purchaser for value, but was merely a "nonreliance" creditor, the court concluded that the Government could obtain only the rights held by Hempstead, the original debtor. Consequently, the court held that under section 29-123, the Bank had a security interest in the cause of action that was protected under Arkansas law as against a subsequently acquired judgment lien arising out of an unsecured obligation and therefore was entitled to priority against the United States pursuant to section 6323(a) and (h)(1) of the Internal Revenue Code.
 
 
 12
 II. DISCUSSION.
 
 
 13
 On this appeal, the Government reiterates its argument that it is entitled to priority because 26 U.S.C. Sec. 6321 grants it a lien for unpaid taxes while the Bank does not have a security interest under section 6323(a) and (h)(1) entitling it to priority over the tax liens. Specifically, the Government asserts that Ark.Stat.Ann. Sec. 29-123, which relates to assignments of causes of action, has been impliedly repealed by provisions of the U.C.C. The Bank, relying on the district court's opinion, asserts that adoption of the U.C.C. in Arkansas did not repeal section 29-123, and that under the McKim decision it possessed a security interest in the fund, protected under local law against a judgment lien arising out of an unsecured obligation.
 
 
 14
 The dispositive issue is whether section 29-123 or the relevant provision of the U.C.C., Ark.Stat.Ann. Sec. 85-9-302, applies in this case. If the U.C.C. applies, the parties agree that the Government prevails in light of this court's analysis in United States v. Trigg, 465 F.2d 1264 (8th Cir.1972), cert. denied, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973). If section 29-123 applies, the Government concedes that we must affirm the judgment of the district court awarding the fund to the Bank.[7]
 
 
 15
 This case presents a very narrow issue and involves a very specialized situation with regard to collateral--the assignment of rights to a cause of action after suit has been commenced. Section 29-123 by its own terms applies to sales or transfers of a judgment or any cause of action on which a suit has been brought. The determinative question is whether the adoption of the U.C.C. in Arkansas in 1961 repealed section 29-123 which was enacted in 1899. 1899 Ark. Acts No. 92, Sec. 1.
 
 
 16
 The Government concedes that judgments are not covered under article 9 of the U.C.C. See Ark.Stat.Ann. Sec. 85-9-104(h) (1961 & 1983 Cum.Supp.). Because section 29-123 applies to judgments and the U.C.C. does not, it cannot be said that section 29-123 was completely repealed by implication with the adoption of the U.C.C. This, the Government acknowledges. Instead, the Government asserts that the Arkansas legislature intended to repeal section 29-123 insofar as it relates to security interests in a cause of action when it enacted the U.C.C. The Government points to Ark.Stat.Ann. Sec. 85-9-102(1)(a) which states that article 9 of the U.C.C. applies "to any transaction (regardless of form) which is intended to create a security interest in personal property * * * including * * * general intangibles * * *." The Government contends that a cause of action is a general intangible, as that term is defined in section 85-9-106,[8] which is subject to the filing provisions of section 85-9-302. Because section 85-9-302 requires the holder of a security interest to file a financing statement to obtain protection against subsequent judgment lienors, the Government contends that a direct conflict exists between section 29-123, as interpreted in McKim, and the U.C.C. Thus, according to the Government, the Arkansas legislature must have intended to repeal section 29-123, as it relates to security interests in causes of action, under the general repealer in the Act enacting the U.C.C., which provided that "all acts and parts of acts inconsistent with [the U.C.C.] are hereby repealed." 1961 Ark.Acts No. 185, Sec. 10-103.
 
 
 17
 Because the Bank did not file a financing statement as required by section 85-9-302, the Government asserts that the Bank did not hold a security interest within the meaning of 26 U.S.C. Sec. 6323(h)(1) (i.e. one protected under local law against a subsequent judgment lien arising out of an unsecured obligation) and therefore does not fall within the protection of 26 U.S.C. Sec. 6323(a). Thus, the Government claims it should prevail under section 6323(a).
 
 
 18
 Although this argument has some appeal, we must reject it. Our task here is not to adopt the construction we think most reasonable, but simply to review the district court's determination that the enactment of the U.C.C. in Arkansas did not impliedly repeal section 29-123. This court accords great deference to the district court's interpretation of state law, see Pyle v. Dow Chemical Co., 728 F.2d 1129, 1130 (8th Cir.1984); Crocker National Bank v. Clark Equipment Credit Corp., 724 F.2d 696, 700 (8th Cir.1984), and will not reverse that interpretation in the absence of clear error or an abuse of discretion. Id. We cannot say that the district court erred in its determination that section 29-123, as it relates to causes of action, survived the adoption of the U.C.C.
 
 
 19
 The district court's determination that section 29-123 remains valid law in Arkansas notwithstanding adoption of the U.C.C. is supported on two grounds. First, as we have already observed, section 29-123, enacted in 1899, specifically relates to the sale or assignment of judgments and causes of action. The U.C.C., enacted in Arkansas in 1961, expressly does not cover judgments. It does not specifically cover causes of action but relates to them generally only to the extent that several other jurisdictions have interpreted the Code's provision for general intangibles to include causes of action. In Arkansas, the rule in this situation is that "[a] general law does not apply where there is another [specific] statute governing the particular subject, irrespective of the dates of their passage." Williams v. Pulaski County Election Commission, 249 Ark. 309, 459 S.W.2d 52, 54 (1970).
 
 
 20
 Second, we note that the Arkansas legislature included a section explicitly repealing over 400 statutes deemed to be superseded by the U.C.C. at the time it enacted the U.C.C. 1961 Ark. Acts No. 185, Sec. 10-102. Section 29-123 was not included in that list. Thus, the district court could reasonably have inferred that the legislature did not intend enactment of the U.C.C. to repeal section 29-123. Moreover, although Arkansas recognizes the doctrine of implied statutory repeal, "[r]epeals by implication are not favored * * * [and] will not be allowed unless the implication is clear and irresistible." Davis v. Cox, 268 Ark. 78, 593 S.W.2d 180, 183 (1980). The Government has not cited any legislative history disclosing such an intent.
 
 
 21
 Arkansas for all of this century has elected to treat intangible rights emanating from a lawsuit in a special category. The special treatment given by Arkansas law to prejudgment claims in pending suits as well as to judgments weighs heavily against the argument made by the United States.
 
 
 22
 We are unable to say that the district court committed any clear error in determining that section 29-123 was the applicable local law in this case. Thus, the Bank is entitled to priority pursuant to 26 U.S.C. Sec. 6323(a) and (h)(1).
 
 
 23
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 Ark.Stat.Ann. Sec. 29-123 (1979) provides:
 The sale of a judgment or any part thereof of any court of record within this State, or the sale of any cause of action, or interest therein, after suit has been filed thereon, shall be evidenced by a written transfer, which, when acknowledged in the manner and form required by law for the acknowledgment of deeds, may be filed with the papers of such suit, and, when thus filed by the clerk, it shall be his duty to make a minute of said transfer on the margin of the record of the court where such judgment of said court is recorded, or if judgment be not rendered when said transfer is filed, the clerk shall make a minute of such transfer on the docket of the court where suit is entered, giving briefly the substance thereof, for which services he shall be entitled to a fee of twenty-five cents [$.25], to be paid by the party applying therefor; and this act [section] shall apply to any and all judgments, suits, claims and causes of action, whether assignable in law and equity or not. When said transfer is duly acknowledged, filed and noted as aforesaid, the same shall be full notice and valid and binding upon all persons subsequently dealing with reference to said cause of action or judgment, whether they have actual knowledge of such transfer or not. (In case the plaintiff and defendant compromise any suit for liquidated or unliquidated damages or any other cause of action after same is filed, when the fees or any part thereof to be paid to the attorney for plaintiff or defendant are contingent, the attorney for the party plaintiff or defendant receiving a consideration for said compromise, shall have a right of action against both plaintiff and defendant for a reasonable fee to be fixed by the court or jury trying the case.)
 
 
 [3]
 Brown & Root instituted this interpleader action before the complaint was dismissed in the underlying breach of contract action. The parties stipulated to their settlement agreement on May 4, 1982, and the court entered an order dismissing that action on June 9, 1982
 
 
 [4]
 Hempstead is in total default to the Bank, having never made a single payment. Consequently, the Bank's claim is for the $100,000 amount of its loan to Hempstead. The Government apparently has partially satisfied its tax liens but still has a claim for unpaid taxes of $64,376.41
 
 
 [5]
 26 U.S.C. Sec. 6321 (1982) reads:
 If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
 
 
 [6]
 26 U.S.C. Sec. 6323(a) (1982) states:
 The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.
 
 
 [7]
 Although we might be inclined upon our own unfettered reading of section 29-123 to grant priority to the Government because the Bank failed to comply with the filing and acknowledgement provisions in section 29-123, that course is not available to us. Under the Erie doctrine, we are bound to apply the interpretation given Arkansas statutes by the Arkansas Supreme Court. The Arkansas Supreme Court has, as the district court found, interpreted section 29-123 in a virtually identical fact situation. McKim v. Highway Iron Products Co., supra. In McKim, the court granted priority to the assignee over the "nonreliance" judgment lien creditor, interpreting section 29-123 as permitting only the claim of a bona fide purchaser for value to take priority over the claim of a party holding a security interest in a cause of action who has failed to comply with the statute's acknowledgement and filing provisions:
 The statute [Sec. 29-123] is in derogation of the common law, and a strict compliance therewith is necessary in order to obtain protection against persons subsequently dealing with reference to a cause of action. The [assignees] did not attempt to comply with the statute, but their failure to do so did not render the assignment invalid so far as [the judgment creditor] is concerned. The assignment was valid as between the parties thereto, and, * * * [the judgment creditor] occupied the position of his debtor, * * * the assignor of the cause of action. As [the judgment creditor] was not a purchaser of the claim of the cause of action for value, he must be regarded and treated as a party to the assignment, and did not take the debt as against the * * * prior assignees thereof for value.
 
 
 [29]
 S.W.2d at 683. Because the Arkansas Supreme Court has interpreted section 29-123's recording requirements as extending protection only to subsequent purchasers for value who "relied" on the recording scheme, this court is not free to apply the pure "first to file" rule contemplated by the U.C.C. Consequently, if section 29-123 applies, the Bank wins
 
 
 [8]
 The Government does not cite any Arkansas cases which have so held, but relies on decisions from various other jurisdictions--none of which apparently has a statute similar to Ark.Stat.Ann. Sec. 29-123