The Honorable Mike Beebe State Senator 211 West Arch Avenue Searcy, AR 72143
Dear Senator Beebe:
This is in response to your request for an opinion regarding Act 29 of the Second Extraordinary Session of 1994, which created a new circuit-chancery judgeship in the Seventeenth Judicial District (West). Your questions concern the selection of the Democratic Party nominee for this judgeship. You have asked whether the statutory provisions governing elections, including the 45-day restriction on certificates of nomination, preclude a primary election scheduled for September 27, 1994. You ask:
 Does the specific nature of this special statute for this particular election override other statutory provisions that may be in conflict?
It must be initially noted in addressing these questions that I have concluded, in response to an opinion request submitted by Secretary of State McCuen, that the portion of Act 29 pertaining to election of the additional circuit-chancery judge at the November, 1994, general election is unconstitutional. See Op. Att'y Gen. 94-285. Thus, while I will address your specific questions involving the election laws and a September 27, 1994, special primary date, please note that the holding of such a primary under Act 29 is not, in my opinion, authorized as a constitutional matter.
While the answer is not entirely clear from a review of Act 29 and the Election Code (Title 7 of the Arkansas Code), it is my opinion that existing election laws in all likelihood do not preclude a September 27, 1994, special primary under Act 29. The answer to your second question is, in my opinion, "yes." Act 29 will be controlling in the event of a conflict with other election laws.
It seems clear that the General Assembly intended to authorize a special primary election as a means of selecting party nominees for the new judgeship. Act 29 declares a "vacancy in nomination," to be filled in accordance with A.C.A. § 7-7-104, after noting that the act will not be effective until after the 1994 preferential primaries. See Acts 1994 (2nd Ex. Sess.), No. 29, § 1. Section 7-7-104 states that nominees to fill a vacancy in nomination shall be declared by a convention of delegates, a special primary election, or petition of electors. A.C.A. §7-7-104(a) (Repl. 1993).
With regard to the date of a special primary, Act 29 states:
 If needed, the Governor shall issue a proclamation specifying the date on which the special primary election shall be held, but not less than thirty (30) days prior to the November 1994 general election. . . .
It is well-established that the first rule in construing statutes is to give effect to legislative intent. See Thomas v. State,315 Ark. 79, 864 S.W.2d 835 (1993). Act 29 reflects legislative intent to authorize a special primary election to be held "not less than thirty (30) days" prior to the November general election. Act 29 imposes no other time restriction. The language of the act indicates that a special primary will be authorized as long as it is held at any time more than thirty days before the general election. The question is whether the General Assembly intended to impose other generally applicable time restrictions under the election laws. It is my opinion that the answer to this question is "no," if the result would in effect prevent a special primary election to fill this "vacancy in nomination."
With regard to the 45-day restriction on certificates of nomination (see A.C.A. §§ 7-7-402(b) and 7-7-203(k) (Repl. 1993)), if applicable this requirement would obviously impose another time limit on the special primary. Section 7-7-203(k)(1) states that candidates for U.S., state, and district offices must file their certificates with the Secretary of State "at least forty-five (45) days but not more than fifty-five (55) days prior to the general election." While a special primary could, it seems, be set on a date that would facilitate compliance with this requirement, the additional imposition of the requirement pertaining to delivery of absentee ballots would, for all practical purposes, nullify the authority to hold a special election under Act 29. See A.C.A. § 7-5-407 (Repl. 1993) (requiring county board of election commissioners to deliver absentee ballots to the county clerk "not less than twenty-five (25) days before any election.") Act 29 was approved August 23, 1994. It is difficult to believe that the General Assembly intended to impose both of these requirements (forty-five days before the general election for certificates of nomination and twenty-five days before the special primary for delivery of absentee ballots), given the short time span between the passage of Act 29 and the November 8 general election. It would be virtually impossible to hold the special primary on a date that would give candidates time to qualify, and also allow for timely delivery of absentee ballots and filing of certificates of nomination. Because I can discern no basis for concluding that one of these requirements was intended to apply to the exclusion of the other, it is my opinion that in all likelihood neither will prevent a special primary scheduled for September 27.[1] This is not, however, a result that is easily reached, given the silence of Act 29 with respect to its operation in relation to other election laws. A conclusive determination may require judicial review.
With regard to other election requirements that may conflict with Act 29, any conflicts must, of course, be reconciled to the extent possible. See Berry v. Gordon, 237 Ark. 547,376 S.W.2d 279 (1964). I cannot, given the limited time for preparing this opinion, undertake an analysis of each potential conflict. It is my opinion, however, that Act 29 will generally be controlling as it is later in time (see generally State v.Lawrence, 246 Ark. 644, 439 S.W.2d 819 (1969)); and it relates specifically to selecting nominees for this judgeship (see generally Brown Root, Inc. v. Hemstead Co. Sand Gravel,Inc., 767 F.2d 464 (8th Cir. 1985)).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] This opinion does not address the actual manner in which absentee voting is handled in the election. Fact questions could conceivably arise concerning the disenfranchisement of voters, depending upon the time factors involved. This is a matter to be addressed by the appropriate election officials.