Reed THOMPSON, Mayor of the City
of North Little Rock, Arkansas, et al
*v.* William D. YOUNTS and James GREEN

84-59                                            669 S.W.2d 471

Supreme Court of Arkansas
Opinion delivered May 29, 1984

*Jim Hamilton,* City Atty., for appellant.

*Howell, Price & Trice, P.A.,* by: *William H. Trice, III,* for appellee.

STEELE HAYS, Justice. This case concerns a salary dispute requiring the interpretation of a North Little Rock city ordinance and the determination of the validity of the repeal of that ordinance.

An initiated Ordinance, No. 5203, was adopted by popular vote in the general election of November, 1980, providing that North Little Rock firemen and policemen were to receive salaries and benefits "commensurate with or greater than Little Rock firemen and policemen — rank,

seniority, time in grade, and service considered." Pursuant to this ordinance, all uniformed North Little Rock firemen and policemen were given salaries equal to their Little Rock counterparts while Police Chief William Younts and Assistant Police Chief James Green, the appellees, were offered salaries less than their Little Rock counterparts. It was determined that in arriving at the salaries of Younts and Green other factors were considered besides those stated in the ordinance.

In December 1981, the North Little Rock City Council passed Ordinance No. 5363 which directed the Mayor to negotiate with each department head and assistant department head of the city and establish a salary for each uniformed and nonuniformed department head and assistant department head. This ordinance also contained a general repealer clause, repealing all ordinances or parts of ordinances in conflict, specifically Ordinance No. 5203. Younts and Green then filed suit against the Mayor, the Aldermen, the Director of Finance, the City Clerk and the City, appellants, alleging that the defendants had failed to comply with the requirements of the initiated act. The trial court found that the City Council had not complied with the provisions of the initiated ordinance when it considered things that were not among the four factors listed in Ordinance No. 5203 and also found that Ordinance No. 5363, purportedly repealing the initiated ordinance was void.

The appellants argue two points for reversal, first contending that the court erred in ruling that the appellants can only consider the factors of rank, seniority, time in grade and service in determining salaries that are commensurate with or greater than Little Rock police and firemen. There were other factors used in determining Younts' and Green's salaries that the trial court found did not conform to the ordinance: the size of the department, educational background and the skipping of ranks. Appellants argue that these three items would all fall under "service" and the skipping rank would fall under seniority as well. On the issue of skipping rank, we agree with the trial court that that point is irrelevant. In essence appellants argue these items

should fall under "service" as they are helpful in evaluating the quality of the work performed to determine commensurate pay. The trial court was correct in finding these factors were not within the ambit of the ordinance.

When construing statutes, the primary object is to carry out the legislative intent which is determined primarily from the language of the statute considered in its entirety. *Henderson* v. *Russell,* 267 Ark. 140, 589 S.W.2d 565 (1979); *Ark. State Highway Comm.* v. *Mabry,* 229 Ark. 261, 315 S.W.2d 900 (1958). In the absence of any indication of a different legislative intent, we give words their ordinary and commonly accepted meaning. The meaning of a statute must be determined from the natural and obvious import of the words without resorting to subtle and forced construction for the purpose of limiting or extending the meaning. *City of North Little Rock* v. *Montgomery,* 261 Ark. 16, 546 S.W.2d 154 (1977); *Hicks* v. *Ark. State Medical Board,* 260 Ark. 31, 537 S.W.2d 794 (1976).

In the present case there are two primary reasons why we disagree with the interpretation urged by appellants. First, the obvious intent of the ordinance, from its plain language, is to put the North Little Rock policemen and firemen on a parity with their Little Rock counterparts, taking into consideration, reasonable factors to determine to whom each individual in the North Little Rock departments should be compared in the Little Rock departments to find the commensurate pay. The pertinent parts of the title and section of the ordinance read:

AN ORDINANCE TO PROVIDE THE NORTH LITTLE ROCK POLICEMEN AND FIREMEN WITH SALARIES AND BENEFITS COMMENSURATE WITH THOSE OF THE LITTLE ROCK POLICEMEN AND FIREMEN . . .

Section 1. That the North Little Rock police and firemen are to be provided with salaries and benefits commensurate with or greater than those of the Little Rock police and fire department, rank, seniority, time in grade and service considered.

Employing the traditional rules of construction we find the intent is clearly stated, as are the factors to be used in making that determination. As the trial court pointed out, "There may be other factors which in the judgment of some and in keeping with good personnel management should be considered, but no such liberty is granted to the City Council by the plain language of the act." The intent of the act is not to set out detailed evaluation standards for individual employees of North Little Rock, but to put those employees on a parity pay scale with Little Rock in a reasonable manner. In addition to the limitation to the four factors by the plain language of the act, if we were to follow the appellants' interpretation of "service" it would bring about an unreasonable result, contrary to the purpose of the act. As pointed out above, although educational background under traditional personnel practices is a reasonable factor to consider in determining salary, it is not listed as a criterion in the ordinance, nor is length of time in the city, personal appearance or any number of things that might have bearing on someone's job performance and conceivably come under the heading of "service." Similarly, if the size of the department is included, it could then extend to number of crimes reported and responded to, types of crimes, calls per day, number of vehicles and so on. The population of a city, which directly affects the size of the departments, is invariably pervasive in its effect on the function of all employees. If such a factor is considered, there would seldom be a North Little Rock job that could be found to be the equivalent of any Little Rock job and the act's purpose of granting commensurate pay would never be accomplished. Appellants' interpretation would lead to innumerable criteria for evaluation and could truly impede if not defeat the goal of the act. A workable and logical interpretation of that term must be utilized to carry out the intended purpose of the act. The trial court, quoting several dictionaries found that the plain meaning of "service" as used in the act was "function" and that the only question to be asked under that heading was: Are the functions of the North Little Rock employees any different from that of their Little Rock counterparts? Although education may or may not have some bearing on the quality of the service (or function), and department size may or may not have a bearing on the

quantity of the service, the function of the chief of police is the same. He is the individual in charge of the police department. Applying the traditional rules of construction, we find no error in the holding of the trial court.

The appellants' second argument challenges the validity of the trial court's finding that Ordinance No. 5363 is void. Ordinance No. 5363 was passed by five of the nine elected aldermen of the City Council, with the Mayor's vote making a total of six votes to pass. This was treated as a two-thirds majority, which Amendment Seven to the Arkansas Constitution requires for a repeal of any measure approved by a vote of the people. The pertinent section of Amendment Seven reads as follows:

> Amendment and Repeal — No measure approved by a vote of the people shall be amended or repealed by the General Assembly or by any City Council, except upon a yea and nay vote on roll call of two-thirds of all the members elected to each house of the General Assembly, or of the City Council, as the case may be.

Appellants rely on Ark. Stat. Ann. § 19-1010 which they contend confers upon the mayor the power to cast such a vote. That section provides:

> § 19-1010   Meeting of aldermen — Organization of City Council — Quorum — Vote of the mayor.
> The aldermen elected for each city shall annually, at the first council meeting in January, assemble and organize the City Council; a majority of the whole number of aldermen shall be necessary to constitute a quorum for the transaction of business. They shall be judges of the election returns and qualifications of their own members. They shall determine the rules of their proceedings and keep a journal thereof, which shall be open to the inspection and examination of any citizen and may compel the attendance of absent members in such manner and under such penalties as they shall think fit to prescribe. The Mayor shall be ex officio President of the Council and shall preside at its meetings, and shall have a vote when the Mayor's

vote is needed to pass any ordinance, by-law, resolution, order or motion. In the absence of the Mayor the Council shall elect a President pro tempore.

The trial court held Ordinance 5363 failed to receive the necessary two-thirds vote required by Amendment Seven. The court found that the mayor was not an elected member of the City Council but only an ex officio member by virtue of his executive position and therefore his vote could not be used in amending or repealing any part of an initiated act, and we concur. First, he is not an elected alderman, but the mayor. Although the mayor may arguably be considered a member of the Council for certain purposes, there is nothing in the reading of that statute to indicate that he is an *elected* member of the Council. To the contrary, the elected aldermen are dealt with as a distinct entity and their duties delineated, while the mayor and his duties in relation to the council are listed separately. We find nothing to suggest otherwise and the appellants cite no authority for their position.

Appellants contend the wording of the Amendment could be construed so that the "elected member" requirement refers only to the General Assembly and not to the City Council — that such a vote by a city council be simply from members of the council, which would include the mayor. This conclusion requires a strained interpretation of that section and is contrary to the spirit and purpose of the Amendment. We have said more than once that Amendment Seven should be liberally construed to effectuate its purpose. *Leigh & Thomas* v. *Hall*, 232 Ark. 559, 339 S.W.2d 104 (1960). In *Leigh*, citing *Ferrell* v. *Keel*, 105 Ark. 380, 151 S.W. 269 (1912), we stated:

In construing this amendment, it is our duty to keep constantly in mind the purpose of its adoption and the object it sought to accomplish. That object and purpose was to increase the sense of responsibility that the lawmaking power should feel to the people by establishing a power to initiate proper, and to reject improper legislation.

In *Tindall* v. *Searan*, 192 Ark. 173, 90 S.W.2d 476 (1936), involving an initiated act fixing salaries of county officers, we said:

> No one doubts that the people, in adopting the Initiative and Referendum Amendment, intended to reserve to themselves the power to control their local affairs, and there is nothing more important to the taxpayers of a county than the regulation of its officers, their compensation, and the expenses of the county.

Taking into consideration our past interpretations of the construction and purpose of the Amendment, any doubtful interpretation must be resolved in favor of the popular will, by upholding the initiated act. Were we to accept the appellants' interpretation, the result would be the repeal of an act adopted by the citizens of North Little Rock. We believe that would be contrary to the purpose of the amendment[1].

Affirmed.

---

[1] We also note that if Amendment Seven were construed as appellants propose, and the mayor were treated as a member of the City Council, the council membership would be ten, and six votes would still not constitute the required two-thirds majority to repeal under Amendment Seven.