Jerry **KIFER** and Mrs. Jerry Kifer, Appellees,

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellant.**

**John Doe # 1, John Doe # 2, John Doe # 3, and John Doe # 4.**

No. 84–1909.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1985.

Decided Nov. 20, 1985.

Rehearing and Rehearing En Banc Denied Jan. 22, 1986.

**1326**

Alston Jennings, Little Rock, Ark., for appellant.

Mark Ledbetter, Jonesboro, Ark., for appellees.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and ROBERTS,* District Judge.

BOWMAN, Circuit Judge.

Defendant-appellant Liberty Mutual Insurance Company (Liberty) appeals from a final judgment entered by the United States District Court for the Eastern District of Arkansas on a jury verdict awarding plaintiffs-appellees $1,025,000 in compensatory and punitive damages. The dispositive issue on appeal is whether the Arkansas Workers' Compensation Act (the Act or the Arkansas Act) bars an injured employee's common law action against his employer's workers' compensation insurance carrier for its alleged negligence in the making of safety inspections of the employer's premises. We hold that the Act does bar this action, and thus we reverse.

## I.

Plaintiff Jerry Kifer (Kifer) was employed as a miscellaneous laborer by Riceland Foods, Inc. (Riceland) at its Jonesboro, Arkansas facility. While walking through a narrow and dimly lighted passageway or catwalk in one of the buildings at the Riceland facility, Kifer fell into an unguarded grain auger (also known as a "screw con-

---

* The HONORABLE ROSS T. ROBERTS, United States District Judge for the Western District of Missouri, sitting by designation.

veyor").[1] Kifer suffered severe leg injuries which resulted in the amputation of his left leg. It was undisputed that Kifer's injuries arose out of and in the course of his employment and that he was therefore entitled to benefits under the Arkansas Workers' Compensation Act, Ark.Stat.Ann. § 81–1301 *et seq.* Liberty, as the workers' compensation insurance carrier for Riceland, paid (and continues to pay) all amounts to which Kifer was entitled under the Act.

After Kifer's entitlement to benefits under the Act had been established, Kifer and his wife filed suit against Liberty (and other unknown "John Doe" defendants) in the United States District Court for the Eastern District of Arkansas.[2] The gist of Kifer's allegations in his complaint and at trial was that Liberty had gratuitously undertaken to inspect the Riceland facility for unsafe working conditions as part of its "safety engineering" and "accident prevention services"; that Liberty was negligent in making such safety inspections by failing to discover and to remedy the unsafe condition of the screw conveyors at the Riceland facility; and that such negligence proximately caused Kifer's injuries.[3]

Liberty filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the Act granted immunity to both Riceland, as the employer, and Liberty, as the workers' compensation insurance carrier. Liberty contended that Kifer's exclusive remedy against either Riceland or Liberty was limited to workers' compensation benefits under the Act, and that his common law action for negligence against Liberty was therefore barred. Kifer thereafter moved for summary judgment on this same issue. The District Court denied Liberty's motion to dismiss and granted Kifer's motion for summary judgment on the issue of immunity. The District Court held that the compensation provided under the Act was not the exclusive remedy against a workers' compensation carrier and that Liberty was a "third party" against whom a common law action for damages could be brought.

The case then proceeded to trial. The second trial of the case[4] resulted in a jury verdict for the plaintiffs. The jury awarded Jerry Kifer compensatory damages of $750,000 and punitive damages of $250,000, and awarded Joyce Kifer compensatory damages of $25,000.[5] The District Court thereafter denied Liberty's motion for judgment n.o.v. and entered judgment in accordance with the jury's verdict, but allowed Liberty a set-off in an amount equal to the amount of workers' compensation benefits paid (and to be paid) to Jerry Kifer. It is this final judgment from which Liberty appeals.

On appeal Liberty asserts four grounds for reversal of the District Court's judg-

---

1. Kifer testified that two fellow Riceland employees had been working on this particular screw conveyor two days before the date of his accident. The metal covers or guards to the conveyor had been removed at that time so that it could be cleaned. Trial Transcript at 79–81. There is no evidence in the record as to whether or not the covers were ever replaced or why or by whom they were removed at the time of Kifer's accident.

2. Jurisdiction was based upon diversity of citizenship between the parties under 28 U.S.C. § 1332(a)(1).

3. Kifer's theory of liability was based upon *Restatement (Second) of Torts* § 324A (1965) which provides as follows:

   § 324A. Liability to Third Person for Negligent Performance of Undertaking
   One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

   (a) his failure to exercise reasonable care increases the risk of such harm, or
   (b) he has undertaken to perform a duty owed by the other to the third person, or
   (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

4. The District Court declared a mistrial in the first trial after the jury reported they were hopelessly deadlocked.

5. Joyce Kifer's claim was a derivative claim for loss of consortium.

ment: (1) the exclusive remedy and third party liability provisions of the Arkansas Workers' Compensation Act, Ark.Stat.Ann. §§ 81–1304 & 81–1340, bar an employee's common law action for damages against his employer's workers' compensation insurance carrier for its alleged negligence in the making of safety inspections of the employer's premises; (2) Liberty did not owe any legal duty to Kifer to exercise reasonable care by making gratuitous safety inspections of the Riceland facility; (3) there was not sufficient evidence to support the jury's verdict; and (4) the District Court erred in not declaring a mistrial because of prejudicial statements made by plaintiff's attorney in his opening statement to the jury. Because we find merit in Liberty's position on the issue of immunity, and because our resolution of that issue disposes of the case, we limit our discussion solely to that issue and do not reach the other issues raised.

## II.

### A.

Arkansas law controls the disposition of this diversity action. Specifically, it is the Arkansas Workers' Compensation Act, Ark.Stat.Ann. § 81–1301, *et seq.*, to which we look to resolve the issue presented.

The Arkansas statute generally is typical of those enacted throughout the country. The basic purpose of the Act is to shift the burden of work-related injuries from individual employers and employees to the consuming public by making available to the injured employee a speedy and informal statutory remedy. *See Simmons First National Bank v. Thompson*, 285 Ark. 275, 277, 686 S.W.2d 415, 417 (1985). To that end the Act provides that "[e]very employer should secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of employment, without regard to fault as a cause of such injury...." Ark.Stat.Ann. § 81–1305. The injured employee is relieved of the burden of proving fault on the part of the employer, and is provided compensation for lost wages and permanent physical impairment and payment of medical expenses.

The quid pro quo for this remedy, however, is that the employer is relieved of any common law liability for damages resulting from accidental work-related injuries to the employee. Section 81–1304 of the Act, commonly referred to as the "exclusive remedy" provision, sets forth this basic principle.

### 81–1304. Remedies exclusive.

The rights and remedies herein granted to an employee ... on account of injury or death, shall be exclusive of all other rights and remedies of such employee, his legal representative ... or anyone otherwise entitled to recover damages from such employer, or any principal, officer, director, stockholder, or partner acting in their capacity as an employer, on account of such injury or death, and the negligent acts of a co-employee shall not be imputed to the employer....

Ark.Stat.Ann. § 81–1304. The Act retains an employee's common law right of action against "any third party." Section 81–1340, commonly referred to as the "third party liability" provision, provides, in pertinent part, as follows:

### 81–1340. Third party liability.

#### (a) Liability unaffected.

(1) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee ... to make claim or maintain an action in court against any third party for such injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in such action....

(2) The commencement of an action by an employee ... against a third party for damages ... shall not affect the rights of the injured employee ... to recover compensation, but any amount recovered by the injured employee ... from a third party shall be applied as follows: Reasonable costs of collection shall be de-

ducted; then one third [⅓] of the remainder shall, in every case, belong to the injured employee ...; the remainder, or so much thereof as is necessary to discharge the actual amount of the liability of the employer and the carrier; and any excess shall belong to the injured employee....

**(b) Subrogation.** An employer or carrier liable for compensation under this act for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for such injury or death. After reasonable notice and opportunity to be represented in such action has been given to the compensation beneficiary, the liability of the third party to the compensation beneficiary shall be determined in such action as well as the third party's liability to the employer and carrier....

Ark.Stat.Ann. § 81–1340.

Workers' compensation insurance carriers figure prominently in this statutory scheme. Section 81–1336, for example, provides that employers must secure the payment of compensation either by purchasing a workers' compensation insurance policy through an authorized carrier or by qualifying as a self-insurer. *See* Ark.Stat. Ann. § 81–1336(a)(1)–(2). Section 81–1337, in turn, provides the procedural mechanism by which the insurance carrier is substituted for the employer in order to facilitate the administration of the Act and to discharge the employer's liability thereunder.[6] The primary obligation to pay compensation, however, remains upon the employer,

notwithstanding the purchase of a workers' compensation insurance policy. *See* Ark. Stat.Ann. § 81–1305.

The Act does not expressly grant immunity to workers' compensation insurance carriers so as to bar a common law action for negligence. Nor is the carrier expressly equated with the employer for such purposes.[7] Liberty contends, however, that the Act as a whole evidences a legislative intent to equate the employer and the carrier. Liberty further argues that section 81–1340, the third party liability provision of the Act, impliedly confers immunity from suit upon workers' compensation carriers.

**B.**

In applying a state statute, federal courts are "bound by the construction given the statute by the highest court within the state." *Slaaten v. Cliff's Drilling Co.,* 748 F.2d 1275, 1277 (8th Cir.1984). The Arkansas Supreme Court, however, has not passed on the precise issue presented in this case. "Where neither the legislature nor the highest court in a state has addressed an issue, the federal court must determine what the highest state court would probably hold were it called upon to decide the issue." *Hazen v. Pasley,* 768 F.2d 226, 228 (8th Cir.1985). In making this determination, a federal court may "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at

---

**6.** The Act provides:

> **81–1337. Substitution of carrier for employer.**—In any case where the employer is not a self-insurer, in order that the liability for compensation imposed by this act ... may be most effectively discharged by the employer, and in order that the administration of this act in respect of such liability may be facilitated, the Commission shall by regulation provide for the discharge by the carrier, for such employer, of such obligations and duties of the employer in respect of such liability, imposed by this act upon the employer, as it considers proper in order to effectuate the provisions of this act. For such purpose (1)

> notice to or knowledge of an employer of the occurrence of the injury shall be notice to or knowledge of the carrier; (2) jurisdiction over the employer by the Commission or by any Court under this act shall be jurisdiction over the carrier; and (3) any requirements by the Commission or any Court under any compensation order, finding or decision shall be binding upon the carrier in the same manner and to the same extent as upon the employer.
> Ark.Stat.Ann. § 81–1337.

**7.** The Act separately defines the terms "employer" and "carrier" in Ark.Stat.Ann. § 81–1302(a) & (o), respectively.

hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

Our task as a federal appellate court, however, is "not to adopt the construction we think most reasonable, but simply to review the district court's determination...." *Brown & Root, Inc. v. Hempstead County Sand & Gravel, Inc.*, 767 F.2d 464, 469 (8th Cir.1985). This Court has often stated that the interpretation of state law by a federal district judge sitting in that forum is entitled to substantial deference. *See, e.g., Dabney v. Montgomery Ward & Co.*, 761 F.2d 494, 499 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); *Brown & Root, Inc.*, 767 F.2d at 469 ("great deference"); *Hazen*, 768 F.2d at 228 ("special weight"). This Court has also noted, however, that "we are not inextricably bound by the [district] court's ruling," and in an appropriate case we must reverse if we find that the district court's interpretation of state law is "fundamentally deficient in analysis or otherwise lacking in reasoned authority." *Ancom, Inc. v. E.R. Squibb & Sons, Inc.*, 658 F.2d 650, 654 (8th Cir.1981). Accordingly, we turn to an analysis of the District Court's ruling in the proceedings below.

## C.

The District Court granted summary judgment to Kifer (and denied Liberty's motion to dismiss) on the issue whether the Arkansas Workers' Compensation Act provided immunity from suit to workers' compensation carriers. The court held that a carrier was a "third party" against whom an injured employee could bring a common law action for negligence in the making of safety inspections of the employer's premises, and, therefore, that the exclusive remedy provision in section 81–1304 did not bar this action.

In reaching this determination, the District Court distinguished the case of *Horne v. Security Mutual Casualty Co.*, 265 F.Supp. 379 (E.D.Ark.1967). In *Horne*, the plaintiff-employee slipped and fell from the top of a machine he was repairing. His left leg plummeted through an opening in the floor into an auger, resulting in severe injuries to his leg and foot. The plaintiff received workers' compensation benefits, but then filed suit against his employer's workers' compensation insurance carrier. He alleged that the carrier was negligent in failing to inspect the employer's premises and in failing to recommend certain safety measures to eliminate unsafe working conditions, and that this negligence proximately caused his injuries. No inspections of the employer's plant or equipment had been made by the carrier before the mishap. The plaintiff contended, however, that the carrier had a contractual duty to make safety inspections and that it was liable to him in tort for its failure to make such inspections.

The federal district court in *Horne* held first that there was no contractual duty on the part of the defendant carrier to inspect the employer's premises. Although that alone would have disposed of the case, the court proceeded to discuss at length the precise issue presented here: whether the Arkansas Workers' Compensation Act bars an employee's common law action for damages against a workers' compensation insurance carrier for its alleged negligence. After reviewing several sections of the Act, the court concluded that under the circumstances presented there the Act insulated the carrier from liability.

Although the court first made reference to sections 81–1304, 81–1337, 81–1305 and 81–1338, the real basis of its decision clearly appears to rest on its construction of the third party liability provision in section 81–1340(a)(1). After citing this section, the district court stated:

> Though [section 81–1340] does not speak of granting an insurance carrier "immunity" from suit by an injured employee, it would seem to negate any interpretation which could expose the insurance carrier to liability as a third party under the circumstances here. This section reserves the right of the employ-

ee to bring an action against a third party, but the question we are concerned with is: Can the carrier be considered as such a third party? Clearly the term as used in this section seems to mean a party other than the employer or carrier, both of whom are mentioned in the same sentence, and who are expressly given the right to join in any action brought by the employee against such a third party.

The first two sentences in [the subrogation clause in subsection (b) of section 81–1340] seem to carry the same connotation:

. . . .

Here again, the employer and the carrier are distinguished from the third party against whom an action may be maintained by the employee.

*Id.* at 383–84.

After then reviewing some decisions from other jurisdictions, the court concluded: "From the wording of the Arkansas Act and the general purposes which underlie it, we are persuaded that at least in the situation involved in this case the employer and the insurance carrier are equated and the plaintiff's only remedies are under the Workmen's Compensation Act." *Id.* at 387.

In the present case, the District Court noted two factors that, in its opinion, distinguish this case from *Horne*. First, the court stated that Liberty "had a contractual obligation to provide accident prevention and safety engineering services." Second, the court noted that in this case Liberty had "actually conducted periodic inspections of the [Riceland] facilities." Record at 17. In support of its reasoning that the presence of either one of these two factors was sufficient to distinguish *Horne*, the court quoted the following language in

*Horne*: "It is apparent that there is one factual difference between all of [those] cases [holding carriers liable] and the one at bar—in all of the cases which have allowed the maintenance of an action against the carrier, safety inspections had actually been made by the carrier." *Id.* (quoting *Horne*, 265 F.Supp. at 385).

We believe the District Court's reliance on this language to distinguish the present case from *Horne* is misplaced. It appears that the District Court failed to properly distinguish between the issues with which it was confronted. Typically in a case such as this there are two separate and distinct issues to be resolved, either of which may be dispositive in a particular case. Logically, the first issue to be resolved is whether the applicable workers' compensation statute bars the employee's common law action for negligence against the workers' compensation insurance carrier. This is usually a matter of statutory construction. The second issue is whether the carrier owed a legal duty to the injured employee, either arising out of contract or imposed by general common law tort principles, with respect to its safety inspections of the employer's premises. Only if it is determined that the applicable statute does *not* confer immunity from suit upon the carrier does the second issue ever arise.

Whether or not the carrier made any safety inspections of the employer's premises is completely irrelevant to the issue of statutory immunity.[8] Instead, that fact is more appropriately considered in resolving the issue of legal duty. The primary source to which we look to resolve the immunity issue is the Arkansas Workers' Compensation Act. The meaning of the Act, however, remains constant. It does not fluctuate from case to case de-

---

**8.** We know of no other cases in which the disposition of this issue turned on whether or not the carrier had actually made any safety inspections. Although some courts have erroneously cited *Horne* for that proposition, those cases were not disposed of on that ground. *See, e.g., Stacy v. Aetna Casualty & Surety Co.,* 334 F.Supp. 1216, 1221 (N.D.Miss.1971).

We believe that the *Horne* court's passing reference to this "distinction" was improvident and served only to confuse the issues. That the district court in *Horne* properly based its decision on a construction of § 81–1340(a)(1), however, is clearly demonstrated by language appearing elsewhere in its opinion. *See Horne,* 265 F.Supp. at 383–84, 387 (quoted in text, *supra* at 1330–1331).

pending upon whether or not the carrier made safety inspections, as the District Court seems to suggest. Under the reasoning of the District Court, if an insurance company, in the performance of its duties as a workers' compensation carrier, made even a single safety inspection of an employer's premises, the workers' compensation act would be construed not to bar an injured employee's common law action against the carrier for its alleged negligence. If, however, the carrier made no effort whatever to ensure safe working conditions, that same workers' compensation statute would be construed to grant absolute immunity from liability to the carrier. We find it difficult to accept that reasoning. Based upon traditional rules of statutory construction and in view of the policies underlying workers' compensation acts, we believe that the same statute cannot have different constructions depending upon factual distinctions such as this. Therefore, we must turn to the Arkansas Workers' Compensation Act to determine whether the District Court's holding is a proper construction of the Act.

## III.

### A.

The provisions of the Act that are most applicable to this case are, of course, the third party liability provision in section 81–1340 and the exclusive remedy provision in section 81–1304, *supra* at 6–7. We are mindful, though, of the general rule of statutory construction that "[a] particular provision of a statute must be construed with reference to the statute as a whole" and not in isolation. *State v. Brown*, 283 Ark. 304, 306, 675 S.W.2d 822, 824 (1984). In construing these provisions we are guided by the "cardinal rule" that our primary object is to determine and to effectuate the legislative intent as gleaned from the language of the statute considered in its entirety. *See Arkansas State Highway Commission v. Mabry*, 229 Ark. 261, 266, 315 S.W.2d 900, 904–05 (1958); *Thompson v. Younts*, 282 Ark. 524, 525, 669 S.W.2d 471, 472 (1984). To ascertain such legisla-

tive intent, we may properly consider not only the language of the statute but also the subject matter, the object to be accomplished, the purpose to be served, the underlying policies, the remedy provided, and the consequences of various interpretations. *See Mabry*, 229 Ark. at 266, 315 S.W.2d at 904–05; *Hanford Produce Co. v. Clemmons*, 242 Ark. 240, 242, 412 S.W.2d 828, 830–31 (1967); *Mears v. Arkansas State Hospital*, 265 Ark. 844, 846, 581 S.W.2d 339, 341 (1979).

Our examination of the Arkansas Workers' Compensation Act leads us to the conclusion that the Arkansas legislature intended to confer immunity from suit upon the insurance carrier in cases like the present one. That conclusion is reinforced by the decision of the federal district court in *Horne* and by the language of the Arkansas Supreme Court in *Neal v. Oliver*, 246 Ark. 377, 438 S.W.2d 313 (1969). It is further buttressed by our view of the unfortunate consequences that would flow from a contrary construction of the Act. We turn now to consider each of these points.

### B.

Neither party has referred us to a single reported Arkansas appellate court decision, and our research reveals none, that addresses the precise issue before us. Apparently the only case to construe section 81–1340 in regard to the issue of a carrier's immunity from suit is *Horne*. The particulars of that case have been stated sufficiently already, *supra* at 1330–1331, and we need not restate them here.

The critical language in subsection 81–1340(a)(1) provides that

> The making of a claim for compensation against any employer *or carrier* for the injury ... of an employee shall not affect the right of the employee ... to make claim or maintain an action in court against *any third party* for such injury, but the employer *or his carrier* shall be entitled to reasonable notice and opportunity to join in such action.

(emphasis added). We agree with the district court in *Horne* that this language "would seem to negate any interpretation which could expose the insurance carrier to liability as a third party...." *Horne*, 265 F.Supp. at 383. The way in which the sentence is structured—equating the employer and the carrier with the disjunctive "or" and providing that the "employer or his carrier" is entitled to notice and to join in the employee's action against the "third party"—strengthens the inference that the carrier was not intended to be a "third party" against whom an employee could maintain a common law tort action for an injury covered by the Act.

The context in which the term "third party" is used throughout section 81–1340 lends even stronger support for this construction. In subsection (b), the "subrogation clause," the "employer *or carrier* liable for compensation" is expressly granted "the right to maintain an action in tort against *any third party* responsible for [the employee's] injury...." (emphasis added) The Act does not define the term "third party," and the only reference in the entire Act to the term "third party" is in section 81–1340. But it is reasonable to infer that the Arkansas legislature's reference to "any third party" in subsection (b) has the same meaning as its reference to "any third party" in subsection (a) of section 81–1340.[9] Moreover, subsection (b) also provides that "the liability of the third party to the compensation beneficiary shall be determined in such action *as well as the third party's liability to the employer and carrier.*" (emphasis added) The wording of this provision clearly indicates that the "third party" against whom an action may be brought cannot be the carrier. Any other construction would produce the illogical result that the carrier would be liable to itself.

The language in subsection (a)(2) of section 81–1340 implies that the extent of a carrier's liability for injuries covered by the Act is limited to the payment of workers' compensation benefits. That subsection establishes a formula by which the proceeds of any recovery from the "third party" are distributed. After deducting "reasonable" attorney's fees and one-third of the remainder for the injured employee, the subsection provides for the distribution of "the remainder, or so much thereof as is necessary to discharge the actual amount of the liability of the employer *and the carrier* ...." (emphasis added) The reference to the phrase "actual amount of the liability of the ... carrier" suggests a legislative intent to limit the carrier's liability to the payment of workers' compensation benefits.

Language by the Arkansas Supreme Court in *Neal v. Oliver*, 246 Ark. 377, 438 S.W.2d 313 (1969) lends additional support for this construction of section 81–1340(a)(1). Although *Neal* did not involve a workers' compensation insurance carrier as the defendant, the language employed by the court seems applicable to the facts of the present case.

> The term "third party" is not defined in the act and the first and second parties are not even mentioned, but from the language employed in the context it is used in § 1340(a) ... "third party" can only mean some person or entity other than the first and second parties involved, and the first and second parties can only mean the injured employee and the employer *or one liable under the compensation act.*

*Id.* at 380, 438 S.W.2d at 315 (emphasis added). The court's reference to "one liable under the compensation act" can only mean a workers' compensation insurance

---

**9.** *See United States v. Nunez*, 573 F.2d 769, 771 (2d Cir.), *cert. denied*, 436 U.S. 930, 98 S.Ct. 2828, 56 L.Ed.2d 774 (1978) (citing "settled principle of statutory construction" that "[w]hen the same word or phrase is used in the same section of an act more than once, and the meaning is clear as used in one place, it will be construed to have the same meaning in the next place").

*See generally* 2A *Sutherland Statutory Construction* § 47.16, at 161 (C. Sands rev. 4th ed. 1984) ("Where the meaning of a word is unclear in one part of a statute but clear in another part, the clear meaning can be imparted to the unclear usage on the assumption that it means the same thing throughout the statute.").

carrier. The carrier is the only other party mentioned in section 81–1340 who is equated with the employer and who is liable for the payment of compensation. *Neal* represents the closest approach of the Arkansas Supreme Court to the issue presented in this case.[10]

We note also that Professor Arthur Larson, who is generally regarded as the leading academic authority on workers' compensation statutes, has reached a similar conclusion in regard to the issue of carrier immunity under the Arkansas Act. In his treatise, Professor Larson includes the Arkansas Act within the category of statutes "that, while not expressly identifying the carrier with the employer [for purposes of immunity], employ language containing a strong implication to [that] effect." 2A A. Larson, *The Law of Workmen's Compensation* § 72.93, at 14–290 to –291 (1983). Professor Larson cross-references to *Horne* for the proposition that under the Arkansas Act a workers' compensation carrier is immune from tort actions brought by the injured employee. His treatment of Arkansas law on this point is summed up with a citation to *Horne* and the statement: "Carrier held immune under the wording of the Arkansas third-party provision, in which the words 'employer or carrier' are closely followed by 'any third party,' thus identifying the employer and carrier in third-party situations, and disassociating the carrier from 'any third party.'" *Id.* at § 72.91, at 14–273 n. 29.

### C.

Our conclusion that the Arkansas Act affords immunity to workers' compensation insurance carriers in cases like the present one is supported by judicial decisions reaching similar conclusions in cases involving the workers' compensation statutes of states other than Arkansas. *See Flood v. Merchants Mutual Insurance Co.,* 230 Md. 373, 187 A.2d 320 (1963); *State Compensation Insurance Fund v. Superior Court,* 237 Cal.App.2d 416, 46 Cal.Rptr. 891 (1965);

*Gerace v. Liberty Mutual Insurance Co.,* 264 F.Supp. 95 (D.D.C.1966); *Mustapha v. Liberty Mutual Insurance Co.,* 268 F.Supp. 890 (D.R.I.), *aff'd* 387 F.2d 631 (1st Cir.1967); *Matthews v. Liberty Mutual Insurance Co.,* 354 Mass. 470, 238 N.E.2d 348 (1968); *Barrette v. Travelers Insurance Co.,* 28 Conn.Supp. 1, 246 A.2d 102 (Super.Ct.1968); *Modjeski v. Atwell, Vogel & Sterling, Inc.,* 309 F.Supp. 119 (D.Minn. 1969); *Mull v. Aetna Casualty & Surety Co.,* 120 Ga.App. 791, 172 S.E.2d 147 (1969); *Reid v. Employers Mutual Liability Insurance Co.,* 59 Ill.2d 194, 319 N.E.2d 769 (1974); *Johnson v. American Mutual Liability Insurance Co.,* 559 F.2d 382 (5th Cir.1977) (construing the federal Longshoremen's and Harbor Workers' Compensation Act); *Smith v. Liberty Mutual Insurance Co.,* 449 F.Supp. 928 (M.D.N.C. 1978), *aff'd mem.,* 598 F.2d 616 (4th Cir. 1979); *cf. Allen v. Employers Service Corp.,* 243 So.2d 454 (Fla.Dist.Ct.App.1971) (service company for self-insured employer held immune from suit); *Coulter v. State,* 93 Wash.2d 205, 608 P.2d 261 (1980) (state labor department and its inspectors held immune from suit). In holding the carrier immune from this kind of suit, these courts generally have considered the adverse consequences of a contrary conclusion in light of the purposes and policies underlying the entire statutory scheme of workers' compensation. Those consequences include, among others, the potential for unlimited liability of workers' compensation carriers, a substantial increase in workers' compensation insurance premiums for all employers, the abandonment of many safety programs currently undertaken by workers' compensation carriers, and a breakdown in the expeditious and informal administration of workers' compensation claims, all to the detriment of employees and employers alike.

The following passage from a much-quoted opinion expresses some of these concerns.

---

**10.** The other Arkansas decisions cited to us by the parties either are not relevant to the issue presented here or do not stand for the proposition for which they were cited.

While safety inspection may not be a duty imposed by the [workers' compensation] statute, it is an integral part of the insurer's function as a compensation carrier.... [I]t is not so much what the insurance carrier is doing that makes it immune, it is the relationship of the carrier and the employer.... If the activity of the insurer, for which it was alleged to be negligent, bore no substantial relationship to its position as the employer's workmen's compensation carrier ... there would be no logical reason to hold the carrier to be immune. However, where the carrier is performing an integral part of its function under the Workmen's Compensation Act, it should be immune under the same reasoning which makes it immune when performing a required activity.

To hold that the defendant ... in [the] performance of a function[ ] necessitated by its role as [the] workmen's compensation insurer, may be sued under the third-party liability provision, could have a decidedly detrimental effect upon the entire compensation program.... Certainly the insurance carrier presents an inviting target when the plaintiff is interested in circumventing the limited recoveries permitted and the immunities granted by the compensation act.... Insurance companies which engage in accident prevention work, the social desirability of which cannot be questioned, should be able to do so without incurring unlimited liability for failing to discover a hazard that some jury might think ought to have been discovered. If an insurance company can escape tort liability altogether by not making any inspections on the [employer's] premises ... but may incur unlimited tort liability by making some inspections, it more than likely will decline to make any .... The ultimate losers will be workmen and their families. The Workmen's Compensation Act is certainly concerned with better and safer working conditions, as well as adequate compensation for injuries. An insurance carrier which conducts a safety inspection program works to achieve these statutory aims, as well as to protect itself. If insurers are to be held liable in tort, as well as for workmen's compensation, every time such an inspection fails to reveal a preventable accident, it would be in effect strict liability. Such additional liability should be imposed only by the legislature and not by the court. The Workmen's Compensation Act was passed to provide for strict liability of the employer, financed by insurance. Liability of the insurer as a negligent third party, when performing an act necessary to the proper carrying out of its function under the act, does not fit into the legislative program.

*Kotarski v. Aetna Casualty & Surety Co.,* 244 F.Supp. 547, 558–59 (E.D.Mich.1965), *aff'd mem.,* 372 F.2d 95 (6th Cir.1967) (citations and footnotes omitted).

Although *Kotarski* was later disavowed as a correct statement of Michigan law in *Ray v. Transamerica Insurance Co.,* 10 Mich.App. 55, 158 N.W.2d 786 (1968) (holding that workers' compensation carrier could be sued as third party tortfeasor for negligent safety inspections voluntarily undertaken), the rule of law announced in *Ray* was itself subsequently overturned by statutory amendment. Thus, the persuasive policy concerns expressed by the *Kotarski* court have been adopted by the Michigan legislature and incorporated into the Michigan Workers' Compensation Act. *See* Mich.Comp.Laws §§ 418.131 & 418.827.

The potential for unlimited tort liability on the part of the insurer can best be put in perspective when one considers the staggering number of workers' compensation claims filed each year. In the state of Arkansas alone there were 80,050 total claims filed in the fiscal year ending June 30, 1985.[11] In each of those claims would lie the potential for the assertion of tort liability against the carrier for its failure to discover and to remedy the condition that

---

**11.** Of this total, 15,866 were claims for lost wages and permanent physical impairment. These figures were provided by the Arkansas Workers' Compensation Commission.

caused the injury. Even in cases where the carrier ultimately would be adjudged not liable, it still would have incurred substantial costs in defending the action. Damage awards and litigation costs would no doubt be passed on by carriers to employers in the form of higher workers' compensation insurance premiums. For many employers in Arkansas the resulting premium increase might well be prohibitive.

Workers' compensation carriers have made substantial contributions to industrial safety and accident prevention. Most carriers voluntarily implement safety programs, such as the safety inspections undertaken by Liberty in the present case. It is, of course, true that these safety programs are "not motivated by an altruistic feeling toward workers, since it is to the financial advantage of the insurance carrier to reduce accidents...." *Brown v. Travelers Insurance Co.*, 434 Pa. 507, 515, 254 A.2d 27, 30 (1969). Nonetheless, these programs inure directly to the benefit of the employees. The mere threat, much less the actual imposition, of tort liability arising from these voluntary safety programs could ultimately result in the abandonment of many of them. The safety inspections in the present case, for example, are part of the "accident prevention services" offered by Liberty to its insureds. Every effort should be made to encourage, rather than discourage, the continuation of these safety programs.

Finally, we also are concerned, as other courts have been, about the potential effect of failing to hold the carrier immune from liability in cases of this kind on the routine handling and administration of workers' compensation claims. The statutory scheme is designed to provide an expeditious and informal remedy for the injured worker. Although most claims are promptly settled between the carrier and the injured employee, an administrative procedure is provided to resolve those cases where the parties are unable to agree. *See* Ark.Stat.Ann. §§ 81–1323 & –1327. Informality and settlement, however, remain the touchstones of the entire process. Anything that would hinder that process would impair the effectiveness of the statute. The threat of tort liability would, in our opinion, be likely to have that effect. As one court has stated, "It is also likely that the [imposition of liability against carriers for negligent safety inspections] could lead to a breakdown in certain aspects of the administration of the Workmen's Compensation Act.... The result would be to defeat the speedy and efficient settlement of the employee's claims." *Modjeski*, 309 F.Supp. at 123.

The reasons for that unfortunate result are easily seen. The mere possibility of future litigation would cause the potential litigants—the carrier and the employee—to become uncooperative adversaries for fear of making damaging admissions that would be used against them at trial. Instead of fully disclosing the facts and circumstances surrounding a work-related injury, each party would assume a defensive posture early in the process in anticipation of future litigation. As one court has stated,

> To allow this action to prevail would relegate [the informal workers' compensation claims process] to one of deafening silence. An atmosphere of caution would pervade the [process], with each party reluctant and wary lest any statement made might be utilized in future [litigation], in which potential recovery and risks would be much greater. For example, the employee, previously not concerned with the question of his negligence since that would not preclude recovery under the Workmen's Compensation Act, now would be circumspect in explaining the circumstances surrounding the accidental injury. So, too, the insurer, while previously willing to accord the employee the benefit of doubt ... might now desist from that practice lest this concession be treated as an admission in a contemplated tort action against it by the employee.

*Barrette*, 28 Conn.Supp. at 6, 246 A.2d at 105–06. Such an "atmosphere of caution," in our view, would be severely detrimental to the purposes for which the workers' compensation laws were established.

■ We conclude that to construe the Act to permit an employee's common law action against a workers' compensation carrier for negligent safety inspections of the employer's premises would be contrary to the purposes and policies underlying the Act. To allow this action would only "open a Pandora's box of ills detrimental to the welfare of the worker...." *Id.* at 7, 246 A.2d at 106. We believe these policy considerations well support our construction of the Arkansas Act.

### IV.

We are aware of decisions in other jurisdictions permitting the injured employee to maintain a common law action against the workers' compensation carrier for its alleged negligence in the making of safety inspections. *See, e.g., Smith v. American Employers' Insurance Co.,* 102 N.H. 530, 163 A.2d 564 (1960) (first case holding carrier liable for negligent safety inspections); *Fabricius v. Montgomery Elevator Co.,* 254 Iowa 1319, 121 N.W.2d 361 (1963); *Nelson v. Union Wire Rope Corp.,* 31 Ill.2d 69, 199 N.E.2d 769 (1964) (construing the Florida workers' compensation statute); *Ray v. Transamerica Insurance Co.,* 10 Mich.App. 55, 158 N.W.2d 786 (1968). Such decisions, however, do not weaken our conclusion as to the proper construction of the Arkansas Act. For several reasons, we find them unpersuasive. First, most of them are based on a construction of a workers' compensation statute with substantially different statutory language than that contained in the Arkansas Act. Second, in most of these cases the courts failed to consider the consequences of their decision in light of the policies and purposes underlying workers' compensation statutes. Third, many of these decisions have been overturned by statutory amendment.

### A.

Many of the statutes employ the phrase "some person other than the employer," or a similar variation thereof, to describe the "third party" against whom an injured employee may bring a common law action for damages. *See, e.g.,* Conn.Gen.Stat. § 31–293; Iowa Code § 85.22; Md.Ann.Code art. 101, § 58; Mass.Gen.Laws Ann. ch. 152, § 15; Minn.Stat. § 176.061, subd. 1; Nev. Rev.Stat. § 616.560, subd. 1; N.C.Gen.Stat. § 97–10.2(a); R.I.Gen.Laws § 28–35–58. Such language does not support as strong and persuasive an argument for carrier immunity as does the language found in the Arkansas Act. It is therefore not surprising to find, in view of the absence in those statutes of any reference to the carrier, that some courts have permitted the employee to maintain a common law action against the carrier as a "third party." *See, e.g., Smith,* 102 N.H. 530, 163 A.2d 564; *Fabricius,* 254 Iowa 1319, 121 N.W.2d 361.

It seems significant to us, however, that several courts have construed such inconclusive language to confer immunity from suit upon the carrier. *See, e.g., Matthews,* 354 Mass. 470, 238 N.E.2d 348; *Barrette,* 28 Conn.Supp. 1, 246 A.2d 102; *Flood,* 230 Md. 373, 187 A.2d 320; *Modjeski,* 309 F.Supp. 119; *Mustapha,* 268 F.Supp. 890; *Smith,* 449 F.Supp. 928; *Coulter,* 93 Wash.2d 205, 608 P.2d 261; *Gerace,* 264 F.Supp. 95. In most of these cases, great emphasis was placed on the underlying policies and purposes of workers' compensation acts and the detrimental effect a contrary construction would have on the entire statutory scheme.

### B.

The policy concerns referred to above were summarily treated by those courts permitting a common law action against the workers' compensation carrier. Typical of many of those courts was the Illinois Supreme Court's response in *Nelson* that "such a question of public policy is for the legislature [and] not for the courts." *Nelson,* 31 Ill.2d at 110, 199 N.E.2d at 792. *See also Fabricius,* 254 Iowa at 1327, 121 N.W.2d at 366 ("no inspection is better than a negligent one"); *Smith,* 102 N.H. at 534, 163 A.2d at 568. We may surmise that such cursory treatment of these important policy considerations, so critical to

a proper construction of this type of statute, was induced by the absence of statutory language providing a strong argument for carrier immunity. Nevertheless, in our view, the cursory manner in which significant policy concerns were dismissed robs these cases of much of their persuasive force.

### C.

We also find significant the fact that the rule of law adopted in most of the decisions permitting this type of action against the workers' compensation carrier has been overturned by statutory amendment. *See* N.H.Rev.Stat.Ann. §§ 281:2, –:12, –:14 (reversing *Smith* ); Fla.Stat. § 440.11(3) (reversing *Nelson* ); Mich.Comp.Laws §§ 418.131 & 418.827 (reversing *Ray* ); Ky. Rev.Stat. § 342.690(1) (reversing *Bryant v. Old Republic Insurance Co.,* 431 F.2d 1385 (6th Cir.1970) ); Pa.Stat.Ann. tit. 77, § 501 (reversing *Mays v. Liberty Mutual Insurance Co.,* 323 F.2d 174 (3d Cir.1963) ). In a number of other states, the carrier is also expressly granted immunity from suit or is equated with the employer for most purposes under the statute, including immunity. *See, e.g.,* Ariz.Rev.Stat.Ann. § 23–906; Ga.Code § 34–9–1(3); Ill.Ann.Stat. ch. 48, § 138.5(a); Ind.Code Ann. § 22–3–2–5; Kan.Stat.Ann. § 44–532; Mo.Rev.Stat. § 287.030.2; Neb.Rev.Stat. § 48–111; N.M. Stat.Ann. § 52–1–6; Or.Rev.Stat. § 656.-018(3); S.D.Codified Laws Ann. § 62–1–2; Tenn.Code Ann. § 50–6–102(a)(3); Tex.Rev. Civ.Stat.Ann. art. 8306, § 3; Wisc.Stat. § 102.03(2). Thus, there is a discernible legislative trend toward granting immunity from suit to workers' compensation carriers for their alleged negligence in the making of safety inspections. In construing the Arkansas Act, we may properly take cognizance of this emerging trend.

### D.

Our research discloses only two states—New Jersey and Mississippi—with workers' compensation statutes that contain language similar to that used in section 81–1340 of the Arkansas Act.[12] The New Jersey statute makes reference to a "third person" against whom the employee may bring a common law action, and likewise makes reference to the "employer or insurance carrier" in apparent contradistinction to the "third person." *See* N.J.Stat.Ann. § 34:15–40. But in *Mager v. United Hospitals of Newark,* 88 N.J.Super. 421, 212 A.2d 664 (Super.Ct.App.Div.1965), *aff'd mem.,* 46 N.J. 398, 217 A.2d 325 (1966), the New Jersey court permitted an employee to bring a common law action for negligence against the workers' compensation carrier. The gist of the plaintiff's allegations was that the carrier was negligent in rendering medical treatment to the injured employee. The carrier operated its own medical clinic to treat employees who were injured in the course of their employment and who were therefore entitled to compensation benefits. The court could find no legislative intent to equate the carrier with the employer for purposes of immunity, stating that most of the provisions equating the two were merely for "procedural" purposes. *Id.* at 424, 212 A.2d at 666. The court stated that it would require more "specific terms" in the statute before it would find that the New Jersey legislature "intended to blend the jural personalities of [the] employer and his compensation carrier so as to bar a common-law action against the latter." *Id.* at 426, 212 A.2d at 667.

We do not believe that *Mager* need be regarded as inconsistent with the result we reach in the present case. Aside from the more "specific terms" found in the Arkansas Act, the defendant in *Mager* was not engaged in an activity that was integral to its function as a workers' com-

---

12. Wisconsin also has a third party liability provision that is substantially similar to § 81–1340(a)(1). *See* Wisc.Stat. § 102.29(1). However, the exclusive remedy provision in the Wisconsin statute has been amended to explicitly include the workers' compensation insurance carrier within its coverage. *See* Wisc.Stat. § 102.03(2). This latter provision was relied upon in *Kerner v. Employers Mutual Liability Insurance Co.,* 35 Wis.2d 391, 151 N.W.2d 72 (1967) to bar an employee's action against a carrier.

pensation insurance carrier. Nor was the activity one that was required of either the employer or the carrier. The court in *Mager* itself noted that "[t]here is nothing in the Workmen's Compensation Act which requires a compensation carrier, any more than an employer, to maintain and operate a clinic." *Id.* In contrast, the safety inspections in the present case were made by Liberty in its capacity as a workers' compensation carrier. Liberty was assisting Riceland in the performance of Riceland's common law duty to provide a reasonably safe work place for its employees.[13]

The third party liability provision in the Mississippi statute is almost identical to section 81–1340(a)(1) of the Arkansas Act. *See* Miss.Code Ann. § 71–3–71. But in *Stacy v. Aetna Casualty & Surety Co.*, 334 F.Supp. 1216 (N.D.Miss.1971), the district court held that the Mississippi Act did not bar an employee's common law action against the carrier for its negligent safety inspections. The continuing validity of *Stacy* is questionable, however, after several recent decisions construing the exclusive remedy provision in the Mississippi statute. *See* Miss.Code Ann. § 71–3–9. The Mississippi Supreme Court appears to have drawn the line between actions based on negligence (for which the carrier is immune from suit) and those based on intentional torts (for which the carrier is not immune). *See Taylor v. United States Fidelity & Guaranty Co.*, 420 So.2d 564 (Miss.1982) (carrier immune from suit alleging negligent failure to pay workers' compensation benefits); *Southern Farm Bureau Casualty Insurance Co. v. Holland,* 469 So.2d 55 (Miss.1984) (carrier not immune from suit for its independent, intentional torts); *cf. McCluskey v. Thompson,* 363 So.2d 256 (Miss.1978) (negligence action against fellow employee barred by exclusive remedy provision); *Trotter v. Litton Systems, Inc.*, 370 So.2d 244 (Miss. 1979) (negligence action against employer for selection of medical personnel barred). Thus, the Mississippi decisions suggest that today a carrier would be held immune from suit for its negligence in the making of safety inspections of an employer's premises.

## V.

For the reasons discussed above, we are of the opinion that the Arkansas Supreme Court, if presented with the issue, would construe the Arkansas Workers' Compensation Act to bar an injured employee's common law action against a workers' compensation insurance carrier for its alleged negligence in the making of safety inspections of the employer's premises. Accordingly, we hold that Liberty's motion to dismiss the complaint should have been granted. Because the claim of Joyce Kifer for loss of consortium is a derivative cause of action, it also should have been dismissed along with her husband's claim. *See Sisemore v. Neal*, 236 Ark. 574, 367 S.W.2d 417 (1963).

13. "[I]mmunity is essentially a functional concept which attaches to activities, not entities." *Latour v. Commercial Union Insurance Co.*, 528 F.Supp. 231, 234 (D.R.I.1981). Other courts have drawn a distinction for purposes of immunity among the various activities undertaken by a workers' compensation carrier. *See, e.g., Brown*, 434 Pa. at 515, 254 A.2d at 30 n. 5; *Burns v. State Compensation Insurance Fund,* 265 Cal.App.2d 98, 100, 71 Cal.Rptr. 326, 328–29 n. 2 (1968) (safety inspections "inextricably interwoven" with status as workers' compensation carrier; *Mager* distinguished); *Tropiano v. Travelers Insurance Co.*, 455 Pa. 360, 362, 319 A.2d 426, 427 (1974) ("medical treatment of injuries is a separate and distinct function of the insurance carrier which does not concern the employer and is not part of the employer's business operations"); *cf. Travelers Insurance Co. v.*

*Savio,* 706 P.2d 1258 (Colo.1985) (permitting injured employee to bring common law tort action against carrier for bad faith processing of compensation claim since that is not a risk contemplated by the workers' compensation statute). As one court has noted, "*Mager* stands for the sensible proposition that the insurer is not immune when its negligence is quite unrelated to its role as workmen's compensation carrier." *Bartolotta v. Liberty Mutual Insurance Co.*, 411 F.2d 115, 119 (2d Cir.1969). We agree with these courts that the immunity under the workers' compensation statute should be limited to only those activities undertaken by the workers' compensation insurance carrier that are integral to its function as such. The making of safety inspections of an employer's premises is such an activity, and the carrier is therefore entitled to the statutory immunity.

The judgment of the District Court is reversed.