The Honorable Donna Hutchinson State Representative 24 Rillington Dr. Bella Vista, AR 72714-3204
Dear Representative Hutchinson:
I am writing in response to your request for an opinion on the following questions concerning the county road tax in Benton County:
 Is the City of Bella Vista entitled to one-half of county road tax funds levied in late 2006 and collected within the city during the year 2007? Does the county's refusal to perform any roadwork within or provide road tax funds to the City of Bella Vista violate the constitution or laws of the state?
As background for these questions, you report that the City of Bella Vista was incorporated by vote on November 7, 2006, with the final order for incorporation signed by the County Judge on December 4, 2006. You further report that the County levied a 2.2 mill county road tax by Quorum Court ordinance adopted November 30, 2006 and approved by the County Judge December 6, 2006. Citing A.C.A. § 26-79-104, you state that the County has refused to remit to the City one-half of the tax collected within the City. You state that the County has also refused to perform any roadwork on streets within the City of Bella Vista because Bella Vista is now incorporated. *Page 2 
RESPONSE
Question 1 — Is the City of Bella Vista entitled to one-half of countyroad tax funds levied in late 2006 and collected within the city duringthe year 2007?
The answer to this question is not entirely clear and may require resort to the courts for a conclusive resolution, but in my opinion the plain language of A.C.A. § 26-79-104 appears to entitle the City of Bella Vista to one-half of the county road tax revenues that were collected after the City's incorporation upon property located within the City's corporate limits.
The county road tax is levied as follows pursuant to A.C.A. § 26-79-101:
 The county court, together with a majority of the justices of the peace of the county, may, at the regular term thereof for making the appropriations and levying taxes for the ensuing year, appropriate and levy not exceeding three mills as the road and bridge tax on all of the taxable property of the county.
A.C.A. § 26-79-101(a) (Repl. 1997).[1]
The tax revenues are apportioned according to A.C.A. § 26-79-104 as follows:
 (a) Of the amount collected from the annual three mill road tax in any county in the state, the county courts shall apportion one-half (1/2), except where a greater amount is allowed by law, of the amount collected upon property within the corporate limits of any city or town for use in making and repairing the streets and bridges in the respective cities or towns. *Page 3 
 (b) The collector of any county in the state shall pay into the treasury of the respective cities or towns the amount so apportioned by the county court, which amount shall be expended exclusively by the cities or towns for the purpose of making and repairing the streets and bridges within the corporate limits of the town or city.
 (c) This section shall not repeal, alter, change, or affect any special act passed under which any city or town is receiving any greater or lesser amount than the three mill county road tax.
A.C.A. § 26-79-104 (Repl. 1997).
There are no Arkansas cases interpreting A.C.A. § 26-79-104 on the precise point at issue involving a city's incorporation after the annual county road tax has been levied.[2] In determining the scope and meaning of the statute, however, I am guided by several general principles of statutory construction. The cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760,765, 68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v.Havens, 337 Ark. 161, 987 S.W.2d 686 (1999)). In this regard, the first rule is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. Weiss v.McFadden, 353 Ark. 868, 120 S.W.3d 545 (2003). The court will construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect will be given to every word in the statute if possible. Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n,342 Ark. 591, 29 S.W.3d 730 (2000). When the language is plain and unambiguous, legislative *Page 4 
intent must be determined from the plain meaning of the language used, without resorting to a search for the legislative intent.Weiss, supra. When the meaning is not clear, the court will look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. MacSteel Div. of Quanex v. Arkansas Okla. Gas Corp.,363 Ark. 22,210 S.W.3d 878 (2005). It is also well established that unless a different legislative intent is indicated, a court will not resort to a strained construction for the purpose of restricting or expanding the meaning of a statute. Thompson v. Younts, 282 Ark. 524, 669 S.W.2d 471
(1984). Nothing is taken as intended that is not clearly expressed.State ex rel. Sargent v. Lewis, 335 Ark. 188, 979 S.W.2d 894 (1998).
Applying these principles, I believe a plain reading of A.C.A. §26-79-104 lends to the conclusion that the legislature intended to provide for a city's receipt of one-half of the road tax revenues that were collected after the date of the City's incorporation upon property located within its corporate limits.[3] Although he was not faced with this precise question, one of my predecessors appears generally to have ascribed to this view. In noting that A.C.A. § 26-79-104 does not condition apportionment of road tax revenues upon the city having levied its own general millage, my predecessor observed:
 [A.C.A. § 26-79-104] unambiguously provides for this apportionment to the cities if tax funds were collected upon property within corporate limits. Moreover, this requirement is mandatory, making use of the mandatory term `shall.' See, e.g., Singleton v. State, 337 Ark. 503, 989 S.W.2d 533 (1999) (stating that the term `shall,' when used in statutory language, usually indicates a legislative intent that the provision be mandatory.) I note, however, that the reference in the language of the statute to `corporate limits' indicates that the cities are not entitled to receive amounts collected upon property now located within corporate limits during a time period before incorporation.
Op. Att'y Gen. 2000-125 at 2-3 (emphasis added). *Page 5 
My predecessor clearly viewed apportionment to the city as dependent upon when collection of the tax occurred in relation to the city's incorporation. This appears reasonable, given that the statute refers only to amounts collected and makes no mention of a requirement that the city must have been incorporated before the road tax was levied by the county. The court will not read into a statute a provision that was not included by the General Assembly. See, e.g., Turnbough v. Mammoth SpringSch. Dist. No. 2, 349 Ark. 341, 78 S.W.3d 89 (2002). It might seem reasonable to require incorporation prior to the date of the road tax levy in order for a city to receive a portion of the revenues collected that year upon property located within its corporate limits, so that the County would have that information when setting the millage rate, but there is no clear basis in the statutes for imposing such a requirement.
I should perhaps emphasize that this conclusion is based upon a construction of the statute, with the aid of general rules of construction, since we do not have the benefit of case law authority directly on point. A judicial ruling may therefore be necessary in order to make a conclusive determination.
Question 2 — Does the county's refusal to perform any roadwork within orprovide road tax funds to the City of Bella Vista violate theconstitution or laws of the state?
I find no general constitutional or statutory requirement that the County must perform roadwork within the City. To the contrary, the care and supervision of the City's streets is confided to the city council.See A.C.A. § 14-301-101(1) (1987) and Sanderson v. Texarkana,supra at n. 1. See also Op. Att'y Gen. 2006-050 (noting that a county is authorized, pursuant to A.C.A. § 14-14-1102(b)(1)(A)(i), to perform work on city streets and bridges, but concluding that such authority does not override the city's authority in this respect.)
Nor does the constitution require that county road tax funds must be provided to the City. As stated in response to your first question, however, A.C.A. § 26-79-104 on its face would appear to require apportionment to the City of one-half of those road tax revenues that were collected after the City's incorporation upon property situated within city limits. I note in closing that similar laws providing for the apportionment of county road funds to cities within the county have been upheld *Page 6 
as constitutional, on the theory that cities are part of the counties in which they lie. Sanderson, supra; Texarkana v. Edwards, 76 Ark. 23
(1905).
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Amendment 61 to the Arkansas Constitution is the current constitutional authority for the levy of a county road tax by county quorum courts. Ark. Const. amend. 61 (Repl. 2004). Amendment 61 was passed in 1982, but there were similar earlier constitutional provisions. See, e.g., former Amendment 3 (submitted to the voters by Senate Joint Resolution 1 of 1915, see Acts 1915 at 1491-92, and repealed by Amendment 61). See also Sanderson v. Texarkana,103 Ark. 529,534, 146 S.W. 105 (1912) (regarding a 1911 special act, noting also an 1899 constitutional amendment authorizing the county court to levy a road tax up to three mills upon voter approval.)
[2] The road tax at issue appears to have been levied on November 30, 2006. You have stated that the Benton County Quorum Court adopted an ordinance on November 30, 2006, levying the 2.2 road tax millage. I assume this was the date of the Quorum Court's "regular meeting in November" for levying taxes. A.C.A. § 14-14-904(b)(1)(A)(i) (Supp. 2007). See also A.C.A. § 26-79-101, supra (providing for levy of the road tax at the "regular term" for making appropriations and levying taxes.) You have also stated that the ordinance was approved by the County Judge on December, 2006, but I have found no requirement that the judge must approve the levy made in November. Regarding the City's incorporation, you have stated that the County Judge signed the final order for incorporation on December 4, 2006. It thus seems clear that the incorporation was not effective until after the November 30 levy date. See A.C.A. § 14-38-115(h)(1)(D)(i) (Supp. 2007) (providing, with regard to an incorporation voted on by electors within the area to be incorporated, that "[t]he incorporation shall be effective on the date the order of the county judge is filed and recorded.")
[3] Taxes are collected between the first business day in March up to and including October 10 in the year succeeding the year in which the levy is made. A.C.A. § 26-35-501 (Supp. 2007). Because the City of Bella Vista's incorporation was final on December 4, 2006, it seems clear that all amounts collected under the 2006 road tax upon property located within the city were collected after such incorporation.
 *Page 1