**H. SCHULTZ & SONS, INC., Plaintiff,**

v.

**BANK OF SUFFOLK COUNTY, Defendant.**

No. 74 C 523.

United States District Court, E. D. New York.

Oct. 19, 1977.

William G. Becker, Jr., New York City, for plaintiff.

Schechter Schechter & Wishod, Smithtown, N. Y., for defendant.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge.

Plaintiff H. Schultz & Sons, Inc. is incorporated and maintains its principal place of business in New Jersey. Defendant Suffolk County Bank is incorporated and maintains its principal place of business in New York. Plaintiff brought this diversity action to obtain the $40,000 face value of a check which was drawn to plaintiff by Unishops, Inc. on an account maintained by Unishops at the defendant bank, and which plaintiff alleges was wrongfully dishonored after the bank learned of Unishops' bankruptcy. Jurisdiction therefore lies under 28 U.S.C. § 1332.

Now before the court are cross-motions for summary judgment originally made in January, 1976. At the request of counsel, argument of the motions was deferred until April, 1977. For the reasons set forth below, plaintiff's motion is granted, and defendant's is denied.

## FACTS

There is no dispute over the essential facts. For purposes of these motions the parties have agreed that the following facts are true:

1. The $40,000 check was dated November 26, 1973 and drawn by Unishops on its account at defendant's bank, payable to the order of plaintiff. Parties' 9(g) statement.

2. Plaintiff deposited the check for collection on November 27, 1973 in its account at Fidelity Union Trust Co. of Newark, New Jersey. *Id.*

3. Fidelity forwarded the check to the Federal Reserve Bank of New York, which in turn forwarded the check to defendant. *Id.*

4. Defendant received the check on November 29, 1973. Stipulated upon oral argument.

5. On the same day, November 29, 1973, the check was photographed, "proven", and debited to Unishops' account by defendant. *Id.*

6. Defendant learned of Unishops' bankruptcy on November 30, 1973 and on that same day gave telephone notice of dishonor of the check to the Federal Reserve Bank. Parties' 9(g) statements.

7. If defendant had not subsequently learned of Unishops' bankruptcy, no additional processing of the check would have taken place prior to the sending out of Unishops' monthly statement. Stipulated upon oral argument.

8. Defendant never honored the check. *Id.*

9. Plaintiff was never a depositor with defendant. *Id.*

## CLAIMS

Initially, plaintiff sought judgment on two theories: (1) that since defendant failed to return the check by its "midnight deadline", it was obligated to pay the check to plaintiff, and (2) since defendant had "finally paid" the check it could not thereafter refuse payment based on its subsequent receipt of notice of Unishops' bankruptcy. Prior to and at the time of argument plaintiff withdrew the first ground for relief, urging only that final payment had been made so that subsequent notice of bankruptcy was ineffective to prevent plaintiff's recovery of the proceeds. Defendant seeks summary judgment on the ground that final payment had not occurred and could not occur until expiration of the maximum time permitted for return of the check, here, midnight on the day following receipt of the check or midnight of November 30, 1973.

As to most of the applicable law the parties are in agreement:

1. If under the circumstances of this case a "final payment" had been made, then defendant bank is accountable to plaintiff for the $40,000 proceeds of the check. NYUCC § 4–213(1).

2. Final payment did occur if the bank had "completed the process of posting" the

check to Unishops' account. NYUCC § 4–213(1)(c).

3. If the bank had "completed the process of posting", the notice of Unishops' bankruptcy came too late to affect defendant's accountability to plaintiff. NYUCC § 4–303(1)(d).

The parties disagree on whether the bank's "process of posting" was completed here, and this squarely raises a question of law, the proper interpretation of § 4–109 of New York's Uniform Commercial Code. NYUCC § 4–109 defines the "Process of posting" as

The usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank;

(a) verification of any signature;

(b) ascertaining that sufficient funds are available;

(c) affixing a "paid" or other stamp;

(d) entering a charge or entry to a customer's account;

· (e) *correcting or reversing an entry or erroneous action* with respect to the item. (Emphasis supplied)

The first four steps listed were completed by the defendant. As to the fifth step defendant argues that, because of the language of subparagraph (e) of § 4–109, it retained discretion, and indeed had the duty under the Bankruptcy Law, to reverse the entry, and it could properly do so anytime up until the "midnight deadline" even though all other steps in the process of posting had been completed. The "midnight deadline" is defined as midnight on the next banking day on which the bank receives the relevant item. NYUCC § 4–104(1)(h). Under the deferred posting practice employed by defendant and authorized by NYUCC § 4–301 the latest possible time for defendant to have returned the subject check unpaid was the midnight deadline.

The Official Comments to this uniform act also aid in its interpretation, and their failure to support defendant's position argues strongly against its validity.

Under defendant's interpretation of the statute, however, the only time the process of posting could be completed would be upon expiration of the midnight deadline. This would mean that the draftsmen's specification of the other steps in the process of posting, aimed at the subjective decision of whether to pay the check and the mechanical process of recording the payment, become meaningless.

Plaintiff's interpretation of subparagraph (e) would permit the "correcting or reversing of an entry or erroneous action" only in the event that an error had been made, whether in decision making or in mechanical recording. It does not, according to plaintiff, authorize correcting or reversing an entry merely upon the receipt of additional information or notice which was not brought to the bank's attention prior to completion of the other elements in the process of posting.

## DISCUSSION

The question presented here was considered by the Supreme Court of Wisconsin in *West Side Bank v. Marine National Exchange Bank,* 37 Wis.2d 661, 155 N.W.2d 587 (1968) and decided in favor of the bank. There, the Wisconsin court read the words "reversing an entry" in subsection (e) to authorize the bank to do precisely that—reverse an entry—without restriction as to the reason for the reversal. The court adopted what it viewed to be the plain meaning of the statute, even though it acknowledged that the legislature's intent was probably to the contrary.

The same problem has been reviewed in depth in a law review note entitled "Bank Procedures and the UCC—When is a Check Finally Paid?", 9 Boston College Industrial and Commercial L.Rev. 1957 (1968). The importance of the concept of "final payment" in the banking sections of the UCC is highlighted by the following paragraph from that article:

The concept of final payment is central to the scheme of Article 4 because the time of final payment of a check or similar item is the starting point for deter-

mining the rights and obligations of a number of parties in relation to an item. When final payment occurs, the payor bank is deemed to be accountable to the presenting party for the amount of the item. At the same time the drawer of the instrument is relieved of liability to the holder because the amount is deemed to have been paid. Also, if the payor bank becomes insolvent and suspends payment once final payment has occurred, the owner of an item will have a preferred claim against the payor bank for the amount. Final payment, furthermore, is one of the occurrences which can prevent the "four legals"—notice, stop-order, legal process and setoff—from being effective to prevent actual payment of the item. Provisional settlement, the credit given by the payor bank to the party presenting an item for collection, becomes final when final payment is made, as does credit for the item between the presenting bank, other collecting banks and the customer seeking payment for the item. Final payment, moreover, marks the end of the collection process and the beginning of the remitting process, whereby the amount of the item is returned to the party demanding payment.

Discussing the Wisconsin case, the author rejects the Wisconsin court's analysis, and suggests an alternative design to accommodate both the language of § 4–109 and the policies underlying its adoption: The author's suggestion would apply subsection (e) only to that part of the process of posting relating to the "recording the payment" and not to the second part relating to "determining to pay". While this reasoning has some appeal, it does not fully solve the problem since an error made in the "determining to pay" part of the process of posting should be just as capable of correction prior to the midnight deadline as would be a typographical or mechanical error in "recording the payment".

▉ Sounder analysis seems to require that the legislature's intent be honored. As described in the excerpt from the law re-

view article quoted above, the process of posting was viewed by the draftsmen as encompassing two parts, the mechanical steps of "recording the payment" and the judgmental steps of "determining to pay". Whatever elements a bank injects into those two parts, and, in whatever sequence they may be performed, once all steps have been taken the "process of posting" is then deemed by the statute to be complete. Moreover, the bank's right to return the check unpaid is subject to two conditions: (1) that it has not "made final payment", i. e. "completed the process of posting", and (2) that the midnight deadline has not passed. The failure of either condition would defeat the bank's right to return the check. ·

(a) Examples 1 and 2 of the Official Comment to UCC § 4–109 contemplate that the process of posting is completed when both the decision to pay has been made and the payment has been recorded, regardless of the order in which those events occur. No mention in those examples is made of an automatic, universal extension of time to the midnight deadline; on the contrary, discussion of the examples given would be unnecessary if, indeed, the draftsmen had intended to make the midnight deadline the only temporal measure of final payment.

(b) Paragraphs 3 and 5 of the Official · Comment to UCC § 4–213 indicate the policies sought to be accomplished by the final payment concept. In neither is it suggested that all there is to final payment is the mere expiration of the midnight deadline.

Nor is the language of § 4–109(e) as plain and unambiguous as the Wisconsin court described. If the language as the Wisconsin court viewed it read merely "reversing an entry", there might be substance to the plain meaning argument for rejecting an otherwise clear legislative intent. However, the statute does not read "reversing an entry". Those words appear in a larger phrase: "correcting or reversing an entry or erroneous action". In the context of this larger phrase, the legislature could have contemplated several different meanings. Following a principle of parallel grammati-

cal construction, it could have meant "correcting an entry or reversing an erroneous action", thereby permitting the first verb to operate on the first direct object, and the second verb to operate on the second direct object. Under this interpretation both phrases involve elements of righting an error. "Correcting an entry" would remedy mechanical or recording errors; "reversing an erroneous action" would permit correction of more complex actions such as judgments over a correct signature or determination of whether sufficient funds were available.

Another possible reading of subsection (e) would present four possible combinations of the two verbs and two direct objects: "correcting an entry", "correcting erroneous action", "reversing an entry", and "reversing erroneous action". Under this view of the language, three of the four involve concepts of "correcting" or "erroneous". Only one of them, "reversing an entry", omits any specific reference to a prior mistake. Thus, five out of these six possible readings of subsection (e) focus upon errors, either mechanical or judgmental.

Under these circumstances the statute cannot reasonably be read as having a plain meaning and unambiguously providing that "error" was not the determinative factor. When the underlying policies and intent of the bank collection sections of the UCC are so clearly demonstrated by its history, see *Bank Procedures of the UCC—When is a Check Finally Paid?, supra,* and by the Official Comments, the court should not adopt an aberrational interpretation of § 4-109(e) such as urged by the defendant here and adopted by the Wisconsin Supreme Court. This is particularly so when the interpretation urged by defendant would render meaningless the remaining four subsections of § 4-109. Furthermore, on a policy level, an enormous legislative effort would be required to substitute in the states' separate enactments of this uniform law language which would unambiguously state the clear legislative purpose.

■ The underlying policy being clear, the legislative intent being bolstered by the Official Comments, and the language of subsection (e) strongly implying merely a device to rectify mistakes, the court concludes that subsection (e) of § 4-109 does not permit a payor bank, without regard to its reason or purpose, to reverse an entry at anytime up to the midnight deadline. Instead, subsection (e) permits corrective action to be taken only in those cases where an error of some type has been made by the bank in completing its process of posting.

Applied to the facts of this case, defendant had made no error and it had, indeed, completed its process of posting. Thereafter, when notice of the bankruptcy was received, it was too late to reverse the entry. Once the process of posting was complete, payment was final, and defendant became accountable to plaintiff for the proceeds, unaffected by the notice of bankruptcy or any other knowledge, notice, stop order, or legal process thereafter received.

Accordingly, plaintiff's motion for summary judgment is granted and defendant's motion is denied.

SO ORDERED.