**Mark A. NELSON, dba Nelson Farm Equipment, Appellees,**

v.

**PLATTE VALLEY STATE BANK & TRUST COMPANY, Appellant.**

No. 86–1431.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1986.

Decided Nov. 14, 1986.

Kenneth C. Fritzler, Kearney, Neb., for appellant.

T.R. Pardy, Howard, S.D., for appellees.

Before HEANEY and WOLLMAN, Circuit Judges, and DUMBAULD,* Senior District Judge.

HEANEY, Circuit Judge.

This appeal presents the issue whether the process of posting of a check has been completed such that a bank has made final payment and has become liable thereon.

**FACTS**

The material facts in this case are not in dispute. Mark A. Nelson accepted a check dated March 1, 1984, from P & P Machinery Co. (P & P) in consideration for the sale of a tractor. The check was drawn on Platte Valley State Bank & Trust Co. (Platte Valley). After telephoning Platte Valley and receiving assurances that there were adequate funds at the time of the call in P & P's account to cover the check, Nelson deposited the check in his account at Northwestern Bank in Madison, South Dakota. After wending its way through normal bank collection channels, the check arrived at Platte Valley on March 6, 1984. On receipt, Platte Valley sent the check to its proofing department where it was pho-

* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

tographed on microfilm and bundled for sorting. It was then taken to data processing and sorted by a machine that reads the magnetic ink characters on checks. Platte Valley normally sorts each check according to the bank it is drawn on and again, for those checks drawn on Platte Valley, according to account number. After the check at issue was sorted, a computer verified the sufficiency of funds in P & P's account, stamped the check "paid," and debited P & P's account. Following this process, the check was sent to bookkeeping for verification of endorsements, signatures, and account balances and for filing pending return to the drawer, P & P.

The process outlined above was completed by noon of March 7, 1984. At 1:30 p.m. on the same day, Platte Valley received a stop payment request on the check from P & P. The request was taken over the telephone by James F. George, a vice president of Platte Valley. By about 3:00 p.m., Platte Valley had notified the Federal Reserve of Omaha that it would dishonor the check and had hand stamped "not" above the "paid" stamp previously placed on it. The check was subsequently returned to the Federal Reserve Bank of Omaha and proceeded through banking channels to Nelson's bank unpaid.

This dispute arises because on March 5, 1984, P & P drew a check on its account at Platte Valley, payable to Platte Valley, in the amount of $28,970.54 as payment on a note. Platte Valley paid the check to itself either late in the day on March 7, 1984, or early March 8, 1984. Thus, if Nelson's check had been honored, P & P's account would not have had sufficient funds to cover the check payable to Platte Valley. By dishonoring the check, however, there were sufficient funds to honor the check payable to Platte Valley and leave P & P's account with a remaining balance of $2,500.

P & P subsequently filed for bankruptcy. Nelson apparently recovered the $2,500 remaining in P & P's account and brought the instant suit in federal district court seeking the remaining $25,500 from Platte Valley for wrongfully dishonoring the check.

On cross motions for summary judgment, the district court ruled in favor of Nelson. The starting point for the district court's analysis was Neb.Rev.Stat.U.C.C. § 4–301(1) (1980). The court reasoned that the section allows a bank to revoke any settlement it has made on an item if, before it has made final payment, the bank returns the item or sends written notice of dishonor. *Id.*

In order to determine whether Platte Valley had finally paid the check, the district court looked to Neb.Rev.Stat.U.C.C. § 4–213(1) (1980). The court found that the relevant portion of the statute states that payment becomes final when the payor bank "complete[s] the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith." *Id.* Thus, the district court determined that the case turned upon whether Platte Valley had completed the process of posting the check before it received the stop payment order and decided to dishonor it.

In determining whether the process of posting had been completed, the district court noted that Nebraska has not adopted section 4–109 of the U.C.C., defining "the process of posting." [1] The court, however, applied the section as a guide to its analysis, reasoning that the rest of the adopted portions of the U.C.C. are consistent with section 4–109. In this light, the court found that there is a split of authority as to when the process of posting is complete. In particular, the court noted disagreement over the proper interpretation of U.C.C.

---

1. U.C.C. § 4–109 provides:

The "process of posting" means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:
(a) verification of any signature;
(b) ascertaining that sufficient funds are available;
(c) affixing a "paid" or other stamp;
(d) entering a charge or entry to a customer's account;
(e) correcting or reversing an entry or erroneous action with respect to the item.

§ 4–109(e), which, by its terms, defines the process of posting to include "correcting or reversing an entry or erroneous action with respect to an item." U.C.C. § 4–109(e). *See, e.g., West Side Bank v. Marine Nat'l Exchange Bank*, 37 Wis.2d 661, 155 N.W.2d 587 (1968) (payment does not become final until all opportunity to reverse errors has passed, i.e., the midnight deadline); *H. Schultz & Sons v. Bank of Suffolk Co.*, 439 F.Supp. 1137 (E.D.N.Y.1977) (interpreting section 4–109(e) as allowing reversal of an entry only in the event of a clerical or mechanical mistake). Faced with such a disagreement, the district court said:

> If [section 4–109] (e) is read to always delay completion of posting until the midnight deadline then there would never be a case in which the process of posting could cause an item to be finally paid until the time for the provisional settlement becomes final under § 4–213(1)(d), *J. White and R. Summers, Uniform Commercial Code* 624 (2d ed. 1980). "With one exception, the commentators, including a commentator who was also the draftsman agree that the Wisconsin Court erroneously interpreted 4–213 and 4–109." *Id. White and Summers* is persuasive. * * *
>
> I conclude that Platte Valley had completed posting of the check when it was put in the file awaiting dispersal to P & P. Since posting had been completed accountability attached and under § 4–213, R.R.S.Neb.U.C.C. (Reissue 1980) the bank no longer could effect a stop payment. The bank remains liable to Nelson on the check.

 Platte Valley argues that the district court erred in its interpretation of the law of Nebraska and would have this Court adopt the approach taken in *West Side Bank*. That is, as a matter of Nebraska law, the process of posting could never be completed until the midnight deadline has passed. We cannot so hold. If a federal court must apply a state statute that the highest court in the state has not construed, it must determine what that court would probably hold were it called upon to decide the issue. *Kifer v. Liberty Mutual Insurance Co.*, 777 F.2d 1325, 1329 (8th Cir.1985). Moreover, if this Court reviews such an issue, the interpretation of state law by a federal district judge sitting in that forum is entitled to substantial deference unless it is "fundamentally deficient in analysis or otherwise lacking in reasoned authority." *Dabney v. Montgomery Ward & Co., Inc.*, 761 F.2d 494, 499 (8th Cir.), *cert. denied,* —— U.S. ——, 106. S.Ct. 233, 88 L.Ed.2d 232 (1985).

 Applying this standard of review, we defer to the opinion of the district court because it is not fundamentally deficient in analysis or lacking in reasoned authority. On the contrary, the district court adopts a position that is well supported by commentators and the case law. Additionally, the views expressed by the Wisconsin Supreme Court in *West Side Bank* rest upon the "plain language" of a section of the U.C.C. that Nebraska has not seen fit to adopt. Absent section 4–109(e), there is no reason to effectively read section 4–213(1)(c) out of the Nebraska version of the U.C.C. by rendering the completion of the process of posting synonymous with the passing of the midnight deadline. Common sense dictates that if section 4–213(1)(c) is to have any effect, it must be possible to complete the process of posting before the midnight deadline. Thus, we accept the district court's interpretation of state law in this respect.

Alternatively, Platte Valley argues that whether final payment has occurred presents an issue of fact precluding summary judgment. In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue as to any material fact exists, and if not, whether the movant is entitled to judgment as a matter of law. *See Augustin v. Quern*, 611 F.2d 206 (7th Cir.1979); *United States v. J.B. Williams Co.*, 498 F.2d 414 (2d Cir.1974). Specifically, Platte Valley argues that final payment of an item via the process of posting consists of two steps: a mechanical step and a judgmental step.

Platte Valley argues that whether the judgmental step was completed presents a genuine issue of fact.

Whatever merit there may be to the argument that final payment requires the two steps, the district court was justified in granting Nelson summary judgment. Even if final payment is a two step process, the deposition testimony of James F. George, a vice president of Platte Valley, indicates that both steps were completed before Platte Valley made the decision to dishonor the check.[2] Thus, there remained no genuine issue of fact to be determined with respect to completion of the process of posting.

For the foregoing reasons, we affirm the summary judgment in favor of Nelson.

---

2. In his deposition George testified as to normal bank procedure in processing checks:

Q. All right. When that's stamped paid, that's the last thing you do before they go over to the customer's check file?

A. Right.

Q. All right. And your bookkeeping entries are completed?

A. Right.

George dep. at 13–14.

Q. What's done first, the posting to the ledger sheet, or the stamping of the word paid?

A. Posting of the ledger sheets. * * *

\*　　\*　　\*　　\*　　\*　　\*

Q. You say—excuse me, you say that it's posted. It's posted first and the paid stamp comes second?

A. Right. Paid stamp is about the last thing we do before we file the item.

Q. Once that's paid it's paid right? I mean that's the last thing you do?

A. Right,

Q. Before—

A. Before we file it, right.

Q. There's nothing provisional about it, that's paid?

A. Yeah, stamp it paid.

George dep. at 42.

Q. Who verifies the signature on these checks?

A. The bookkeepers do as they file the checks. The signature card is in that file. As they file that item, they verify signatures.

Q. All right. And who ascertains if there's sufficient amounts to cover the check?

A. Well, I guess the computer does in a way, as the item goes through the system.

Q. Okay. And then entering a charge to the customer's account, is that all done by computer?

A. Right.

Q. And those three things are done before the thing's finally stamped paid; right?

A. Right.

George dep. at 44.

George also testified that, by the time Platte Valley received the stop payment order, the check had come to rest in P & P's file.

Q. How did [the "not" stamp] get on the paid stamp?

A. Okay. You know, after Mr. Parrett called and said, you know, gave me the stop payment order at 1:30 on the 7th, we went to the file and pulled the check out and since it said paid, we put the not stamp on there to say it was not paid.

George dep. at 43.

Thus, at the time Platte Valley received the stop payment order, the check was in P & P's file, and, under normal procedures, once in a file the bank took no additional action save returning the check.