■ PACE PUBLICATIONS, INC., Respondent, v BANK OF NEW YORK, Appellant.—Order, Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered March 1, 1991, which, insofar as appealed from, denied defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, with costs, defendant's motion is granted, and the complaint is dismissed. The Clerk is directed to enter judgment in favor of the defendant-appellant dismissing the complaint, with costs.

Plaintiff is a creditor of Select Magazine (Select), a customer of defendant The Bank of New York (BNY). Plaintiff brought two causes of action against defendant for refusal to make payment on a check of Select (Check 85414) drawn to plaintiff,

and received by the defendant on April 5, 1989. The first cause of action is for damages for wrongful refusal based upon an alleged failure to timely dishonor the check by the April 6 midnight deadline as prescribed by UCC 4-301 (1) and 4-302 (a). The second cause of action is for damages based upon an alleged reversal of a prior decision by defendant to honor the check for reasons impermissible under UCC 4-109.

Defendant moved for summary judgment based upon affidavits and documentary evidence which, the defendant urged, unequivocally established that its dishonor of the check was timely and proper. We disagree with the IAS Court's conclusion that there exist issues of fact as to whether defendant cancelled its automatically imprinted "PAID" stamp (April 5, 1989) on Check 85414 on April 6 or April 7, 1989, and whether such cancellation was made pursuant to Select's timely direction, prior to completion of the bank's posting process, to withhold payment of checks drawn on Select's accounts.

The cancellation stamp imprint on the check reads: "PAID STAMP CANCELLED APR 06 1989 THE BANK OF NEW YORK". If the defendant were relying upon this stamp alone to support its motion for summary judgment, we might agree that an issue of fact was presented with respect to the date of cancellation, since the defendant did not submit evidence demonstrating that this particular stamp, which was affixed by a return items clerk, could not have been backdated. However, the defendant presented additional documentary evidence, which plaintiff attacks only by way of suspicion and conjecture, establishing that the defendant's cancellation of payment was in fact timely made on April 6, 1989.

First, defendant submitted a "RETURN ITEM CASH LETTER" dated April 6, 1989, addressed to the Jericho, New York branch of the Federal Reserve Bank (hereafter "Jericho Fed."), which accompanied a bundle of 45 return item checks totalling $2,036,207.19. Attached to the Return Item Cash Letter is an adding machine tape listing the amounts of the 45 returned checks, including one for $77,530.66 (the amount of Check 85414) which, when added, total $2,036,207.19. The Jericho Fed. received the check on April 7, 1989 as part of the defendant's Return Item Cash Letter, as demonstrated by a stamp which reads "AP '89' 07 0214-0950-9". As set forth in the affidavit of Anthony N. Sagliano, the Regional Manager of the Jericho Fed., the aforesaid stamp was placed on the check by the Jericho Fed.; the number "0214-0950-9" is the "America Banking Association Routing Transit Number of the Jericho Office of the Federal Reserve"; and the "records of the

Jericho Office of the Federal Reserve show that Check 85414 was processed on April 7, 1989 with the outgoing items as part of a Return Cash Letter received from The Bank of New York." Mr. Sagliano further affirmed that after the Jericho Fed. processed the check on April 7, it was sent to the Federal Reserve Bank in Milwaukee, Wisconsin that same day.

Defendant also presented on its motion for summary judgment the affidavit of Thomas E. Sterling, an Operation Officer for M & I Marshall and Ilsley Bank of Milwaukee, Wisconsin ("M & I") and M & I Data Services, Inc. ("DSI"). Mr. Sterling affirmed that DSI provides bulk filing operations for M & I and over 50 other banks, including the University National Bank of Milwaukee, Wisconsin, which was the depository bank for Check 85414. In the State of Wisconsin, Return Items are presented intermixed with good "on us" items, and thus a returned check follows the same operational procedures through DSI systems as a good check being presented for payment. He further explained that Check 85414 was received by M & I on April 10, 1989 from the Federal Reserve Bank in Jericho via the Milwaukee office of the Federal Reserve Bank of Chicago as a Qualified Return Item. On April 10, 1989 DSI placed a stamp on the back of the check which reads "AP '89' 10 PAID DRAWEE INSTITUTION", and forwarded the check to its customer, University National Bank of Milwaukee, which returned it to the plaintiff Pace Publications, Inc.

This uncontradicted evidence sufficiently explains the "PAID" stamp dated April 10, 1989 which the IAS Court stated was unexplained. The IAS Court also found unexplained the April 7, 1989 stamp, but that stamp was in fact fully explained by Anthony N. Sagliano, the Regional Manager of the Jericho Fed., as set forth earlier in this memorandum. Thus the defendant Bank of New York has painstakingly demonstrated its timely cancellation of Check 85414 on April 6, 1989, and has explained every stamp imprint on the check bearing dates subsequent to that date, as well as the complex processing of the check from the April 5, 1989 date of receipt until its return to the plaintiff.

The record is also clear that defendant dishonored the check (among others not relevant herein) because of Select's stop payment order which was received by the defendant on April 5, or at the latest April 6, 1989.* Plaintiff's claim that the

---

* Technically, since Select had ordered the defendant to withhold payment on all checks drawn on its accounts, the account upon which Check 85414 had been drawn was on a "no-post" status, which is effectively the same as a stop payment order on all checks including the check here at issue.

defendant dishonored the check so that it could use funds in the account to satisfy Select's debt to it under a line of credit is clearly meritless, since Select had fully paid off its line of credit on April 4, 1989. Thus, as of April 5, 1989, Select was not indebted to the defendant.

Plaintiff, relying on *Schultz & Sons v Bank of Suffolk County* (439 F Supp 1137) in support of its argument that UCC 4-109 does not permit a payor bank to reverse an entry at any time up to the midnight deadline without regard to its reason or purpose, apparently misapprehends the facts in that case, in which the bank dishonored a check upon learning of the drawer's bankruptcy *after it had completed* its process of posting. Upon completion of the posting process "final payment" was made, and the defendant bank was thereupon accountable for the amount of the check (UCC 4-213 [1]).

In the case now before us, the defendant Bank of New York's posting process, as here pertinent, begins with the automatic mechanical imprinting of a "PAID" stamp on the check by a high speed check sorting machine, which occurs immediately upon receipt of the check. Thereafter, a clerk manually reviews the check to determine if there is a reason payment should not be made (e.g. stop payment, insufficient funds, no-post instructions or signature verification). If the clerk determines that payment should not be made, he or she stamps the front of the check with a "BNY Return Stamp", which appears on the front of Check 85414, The clerk then gives the check to the return items section, and a clerk in the return items section cancels BNY's endorsement of the check by affixing to the back of the check a stamp that contains the date and the legend "PAID STAMP CANCELLED". Cash items (checks presented for collection) upon which final payment is not to be made are returned to the Federal Reserve by a Return Item Cash Letter indicating the date of return, the number of checks returned and the total dollar amount of the returned checks. The Return Item Cash Letter is accompanied by an adding machine tape listing each returned check and the total dollar amount of the returned checks.

Clearly, the posting process had not been completed at the time BNY determined to reject the check. As noted earlier, each and every stamp on Check 85414 has been accounted for and fully explained, and none of them, nor any other evidence presented on the motion, raises a genuine issue of fact as to whether BNY timely cancelled its "PAID" stamp notation on April 6, 1989 prior to the completion of its posting process. Accordingly, defendant's motion for summary judgment dis-

missing the complaint should have been, and is hereby, granted. Concur—Sullivan, J. P., Carro, Ross, Asch and Smith, JJ.

