The Honorable George Hopkins State Senator 78 Harver Hills Malvern, Arkansas 72104
Dear Senator Hopkins:
This opinion is being issued in response to your recent question regarding school districts' grievance procedures. You have presented the following question:
 Can school district employees grieve concerns that are related to the district's personnel policies, even if those policies are not part of the district's formal written personnel policy manual?[1]
It is my opinion that the grievance procedure that is required by state law is applicable to both written and unwritten school district personnel policies.
I base this conclusion on two well-established rules of statutory construction. One such rule states that in interpreting statutory language, it is appropriate to give the words their ordinary and usually accepted meanings in common language. Cheqnet Systems v. State Bd. ofCollection Agencies, 319 Ark. 252, 890 S.W.2d 595 (1995). Another such rule states that it is also appropriate to interpret the statutory language by looking to the subject matter, the object to be accomplished, and the purpose to be served by the statute. Kifer v.Liberty Mut. Ins. Co., 777 F.2d 1328 (8th Cir. 1985).
The statutory language in question is that set forth in A.C.A. §6-17-208(a), which states:
 (a)(1) It is the public policy of the State of Arkansas that each school district shall have a written grievance procedure which provides for an orderly method of resolving concerns raised by an employee at the lowest possible administrative level.
 (2)(A) "Grievance" shall mean any concern related to personnel policies or salary raised by an employee.
A.C.A. § 6-17-208(a).
The essence of your question is whether the phrase "personnel policies," as used in § (2)(A) above, refers only to written personnel policies. It is my opinion that it does not. A reading of the phrase under which it is given its "ordinary and usually accepted meaning" requires that the phrase be interpreted to include unwritten, as well as written personnel policies. This office has, on at least two occasions, considered the meaning of the phrase "personnel policy."[2] On both occasions, the phrase was interpreted broadly enough to include unwritten policies. For example, in Opinion No. 84-167, this office noted that "by their very nature, personnel policies include guidelines to be followed by employees in carrying out the manner of their work." Similarly, in Opinion No.95-370, this office described a "personnel policy" as "a definite course or method of action selected to guide and determine present and future decisions affecting a body of persons employed in a service or an organization." As previously noted, these descriptions are not controlling, but rather are to be used as interpretive devices in reading the statutory language in question. As such, they indicate that the phrase "personnel policy" may be interpreted to encompass policies that are not written. This reading of the phrase is bolstered by the fact that the legislature did not expressly limit the phrase to include only written policies.
My conclusion regarding this matter is also supported by the expressly stated legislative intent of and purpose to be accomplished by A.C.A. §6-17-208. The language of § (a)(1), quoted above, clearly indicates an intent to provide "for an orderly method of resolving concerns raised by an employee at the lowest possible administrative level." It is unlikely that the legislature would have intended that concerns about some policies be resolved at the lowest possible administrative level, but that others be resolved at some other level, and in some other manner. The purpose of A.C.A. § 6-17-208 clearly would be undermined if it were not applied to both written and unwritten policies.
For these reasons, I conclude that the grievance procedure required by A.C.A. § 6-17-208 is applicable to all school district personnel policies.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Your correspondence indicates that the particular unwritten policies about which you are concerned did not go through the procedure required by A.C.A. § 6-17-201 et seq. for the adoption of personnel policies. I have recently opined that in school districts that have personnel policies committees, all personnel policies that go into effect in those districts must be adopted pursuant to this process. See Ops. Att'y Gen. Nos. 95-369 and 95-370. One of the provisions of that process requires that each teacher and administrator be provided with "a copy of" the district's personnel policies. A.C.A. § 6-17-206. This provision could be interpreted as a requirement that all personnel policies be written. This office has not addressed the question of whether such an interpretation is correct, and recognizes the fact that, in practice, many school districts are likely to have certain unwritten policies.
[2] It should be noted that the Attorney General's Office, being a member of the executive branch of government, cannot formulate a controlling definition of any term where the legislative branch has elected not to do so. See Op. Att'y Gen. No. 93-272.