Mr. Bill Van Cleve, Executive Director Arkansas Public Employees' Retirement System One Union National Plaza, Suite 400 Little Rock, Arkansas 72201
Dear Mr. Van Cleve:
This is in response to your request for an opinion on two questions arising under Act 884 of 1999, now codified at A.C.A. § 24-4-106 (Supp. 1999). That act, the pertinent provisions of which are set out below, is entitled "An Act Prohibiting an Employer Participating in the Arkansas Employees' Retirement System from Contributing to Another State Authorized Retirement Plan; and for Other Purposes." You indicate that the Board of the Arkansas Public Employees' Retirement System ("APERS") adopted a regulation pursuant to this new act, (Regulation 310). The Board is now seeking to implement the act and the regulation and questions have arisen as to what precise types of additional retirement plans the act applies. It will be helpful to set out the pertinent provisions of the act and the regulation prior to outlining your specific questions. Section 24-4-106 provides as follows:
 (a)(1) Notwithstanding any provisions to the contrary, it is considered sound public policy to limit contributions by public employers to one state-authorized retirement plan. Accordingly, effective July 1, 1999, employers participating in the Arkansas Public Employees' Retirement System shall not establish any other state-authorized plan that requires contributions by the employer. The Board of Trustees of the Arkansas Public Employees' Retirement System shall promulgate such rules and regulations as are required to prohibit the establishment of such plans in the future.
 (2) It is the intent of the General Assembly to eliminate existing plans through attrition over a period of time to be determined by the Board.
 (b) The Arkansas Public Employees' Retirement System shall notify all participating employers on an annual basis of the requirements of this section and the board rules and regulations governing this subject.
The applicable regulation (Regulation 310) provides as follows:
 In accordance with Act 884 of 1999, effective July 1, 1999, employers participating in APERS may not establish another state authorized retirement plan which requires employer contributions. Before a participating employer may establish another state authorized retirement plan for its employees, the employer shall submit a copy or the proposed plan and the State law(s) authorizing its creation to the APERS Board of Trustees for a determination of compliance with Act 884. The Board will provide a Determination Letter to the employer. If it is determined by the Board, after consultation with any needed sources, that the proposed plan is not permitted under Act 884, APERS shall notify the employer that the plan shall not be established.
 Any participating employer that has established another state authorized retirement plan before July 1, 1999, shall submit to the APERS Board of Trustees a copy of that plan and the state law(s) authorizing its creation. The required material shall be submitted on or before October 1, 1999. The Board will provide a Determination Letter to the employer. If it is determined by the Board, after consultation with any needed sources, that a plan in existence before July 1, 1999 must be eliminated through attrition, as required by Act 884, then new employees hired on or after 30 calendar days after the date of the Determination Letter by the Board shall not be permitted to participate in the other plan. This includes former employees who had participated in the other plan and whose break in service exceeds 6 consecutive months.
You note that APERS has surveyed all of the participating employers and determined that there are four employers that have other plans to which the employer makes contributions. Two employers, you note, maintain "profit sharing plans"[1] in which employer contributions are not "required" for the other plan, but are rather, voluntary. You state that an employer may contribute up to 15% of covered compensation annually in an IRS Section 401 (a) profit sharing plan. These employers, however, contend that such plans are not covered by the requirements of Act 884 because the Act only applies to plans where employer contributions arerequired. You state that it is not known whether these employers are making regular contributions, although "an initial contribution may have been required to establish the trust."
You pose two questions in this regard, as follows:
 1) Whether plans in which employer contributions are discretionary rather than required are prohibited and must be eliminated through attrition pursuant to Act 884 and Board Regulation 310, and
 2) Whether plans in which initial employer contributions were required but further contributions are discretionary are similarly covered within Act 884 and Regulation 310?
RESPONSE
It is my opinion that the answer to both of your questions is "yes."
Question 1 — Whether plans in which employer contributions arediscretionary rather than required are prohibited and must be eliminatedthrough attrition pursuant to Act 884 and Board Regulation 310?
It is my opinion that the answer to this question is "yes."
As an initial matter, it appears that your questions involve existing plans. That is, you do not inquire about the provisions of the act that prohibit the establishment of new plans. Your questions focus, rather, on the elimination by attrition of existing plans. In order to construe Act 884, however, it is necessary to look at the legislative intention expressed as to both these requirements. I am guided, of course, by the primary rule of statutory construction, which is to give effect to the legislative intention. See e.g., Vanderpool v. Fidelity Casualty Ins.Co., 327 Ark. 123, 847 S.W.2d 707 (1997); and Thomas v. Cornell,316 Ark. 366, 872 S.W.2d 370 (1994).
Act 884, in Section 1, prohibits the establishment of any other state-authorized plan that requires contributions by the employer. It also states that the Board shall promulgate rules to prohibit the establishment of "such plans" in the future. The act then states that it is the legislative intention to eliminate "existing plans" through attrition. Although the provision prohibiting the creation of new plans refers to plans in which contributions are "required," it is evident from other provisions of the Act that the intention of the act is to prohibit the contributions, whether required or discretionary. This holds true in my opinion whether the issue is the establishment of a new plan or the elimination of an existing plan. In this regard the title of Act 884 is "An Act Prohibiting an Employer Participating in the Arkansas Employees' Retirement System From Contributing to Another State Authorized Retirement Plan; and for Other Purposes." The title of the act speaks in terms of prohibiting the contributions, and does not differentiate as to their mandatory nature. The title of an act, although not controlling, may be referenced to resolve ambiguities in the body of the act. Seee.g., Routh Wrecker Service Inc. v. Wins, 312 Ark. 123, 847 S.W.2d 707
(1993). Similarly, the first sentence in Section 1 states that it is sound public policy to limit contributions by public employers to one state authorized retirement plan. Again, this expression of legislative intent does not hinge on the mandatory nature of the contributions. Finally, the intention of the legislature could be easily thwarted, in my opinion, by an interpretation authorizing discretionary employer contributions. Under this interpretation, existing plans in which contributions are now required could simply switch to a discretionary plan and continue to make the exact same employer contributions under the guise of their being "voluntary."
In determining the intent of lawmakers, the courts are required to look to the whole act, rather than to isolated words or sections. See Kiferv. Liberty Mut. Ins. Co. 777 F.2d 1325 (1985); Elizabeth Arden SalesCorp. v. Gus Blass Co., 150 F.2d 988, cert. denied 326 U.S. 773 (1945). The intent that is reflected by the act as a whole should take precedence over any intent reflected by isolated words or sections. Id. In short, therefore, it is my opinion, reading the act as a whole, that the legislative intention was to prohibit the making of contributions to other plans by public employers who participate in APERS, irrespective of the use of the word "required" in Section 1. See also generally, Op. Att'y. Gen. 99-060.
Question 2 — Whether plans in which initial employer contributions wererequired but further contributions are discretionary are similarlycovered within Act 884 and Regulation 310?
It is my opinion, consistent with the above, that the answer to this question is also "yes."
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] Although the notion of a "profit-sharing plan" provided by a public entity is somewhat uncommon, it is my understanding that the entities at issue are certain municipal utility providers such as those discussed in Op. Att'y. Gen. 99-060. Some such entities currently provide "defined contribution plans" authorized at A.C.A. § 14-234-310 in addition to participation in APERS.